LEWIS S. FLAGG, JR., Plaintiff, *v.* D. WARD NICHOLS, Individually and as Bishop of the First Episcopal District of the African Methodist Episcopal Church and as Presiding Officer of Each of the Conferences Comprised thereunder, et al., Defendants.

Supreme Court, Trial Term, New York County, July 25, 1952.

*Bernard R. Lieberman* for plaintiff.

*Alan L. Dingle* and *Alvahteen E. Howard* for D. Ward Nichols, defendant.

HECHT, J. Plaintiff, an attorney, sues to recover the reasonable value of legal services he claims he rendered to defendants.

Defendant, African Methodist Episcopal Church, commonly referred to as the A.M.E. Church, is a denominational Protestant Congregational Church. It is an unincorporated society, composed of various churches, and benevolent, charitable and religious corporations, hospitals, schools, book publishing companies, departments and boards. Its administrative work is handled by clerical and lay officers, such as bishops, ministers, elders and deacons. Its denominational head is the General Conference, which body meets once in four years, unless a " Special General Conference " is called for a particular purpose. The General Conference is composed of delegates, both ministerial and lay, from various other divisions and departments of the Church, and addresses itself to the hearing and taking of reports from the various minor conferences and departments, the election of bishops and other departmental and general officers, the naming of standing and special committees and such other matters, both temporal and religious,

as may affect the Church. When the General Conference is not in session, the Bishops' Council has authority to regulate all affairs and have full supervision over the entire Church during the interim between meetings of the General Conference.

The territory covered by the Church is divided into seventeen districts, called episcopal districts, and a bishop is assigned to preside over each episcopal district. The local churches, departments, boards and divisions within the episcopal district comprise certain annual conferences which control the local churches in religious as well as temporal matters. The bishop who presides over the episcopal district also is the presiding officer of each of the annual conferences within the episcopal district. The annual conference elects its officers other than its presiding officer.

In 1946 a controversy arose within the First Episcopal District which affected the general Church, for it involved the right of the Church to discipline and remove one of its bishops. The individual, one Sims, was the bishop who had been previously assigned to the First Episcopal District and had been removed as the result of charges preferred against him and others. One Bishop Wright had been assigned to supersede Sims in the First Episcopal District. In August, 1946, plaintiff was requested by telephone to appear at the Hotel Theresa in New York City where certain officers of the Church were in session. Upon his arrival he found six or seven bishops, ministers and others present. He was met by Bishop Wright, who introduced him to the group. After a general discussion they told plaintiff that they desired him to render legal services in the matter of the charges against Bishop Sims, which were to be heard before a trial committee at a Brooklyn church the next morning. Plaintiff stated he would be present and did attend at the Brooklyn church where the trial was to be held and conferred with the officials he had met at the Hotel Theresa. The original meeting broke up in disorder and was adjourned to another church in Brooklyn where plaintiff attended. Before any affirmative action could be taken, the committee was served with an order to show cause which had been obtained by Sims for an injunction against the holding of the meeting, which was accordingly adjourned. An attorney, Mr. Pokorny, who was representing Bishop Wright in another action, suggested to the bishop that plaintiff be designated to appear upon the return of the motion for the injunction. This was agreed to, and plaintiff prepared papers in opposition to the motion and

on the return day appeared and argued it before Mr. Justice Schreiber in Bronx County Supreme Court. The court denied the injunction and also denied a motion for reargument.

Bishops Wright and Green then requested plaintiff to sit in on the trial of the case of Sims against Wright which came on for trial in New York County Supreme Court. In compliance with the request plaintiff attended at the trial for eight days.

Subsequently, a special meeting of the General Conference was called at Little Rock, Arkansas, which plaintiff attended at the request of Bishop Wright, made through Reverend L. L. Berry who purchased and delivered to plaintiff a railroad ticket to attend. At Little Rock plaintiff conferred with other attorneys and he prepared the charges against Sims which he subsequently read before the special trial committee. He spent several days at Little Rock. Thereafter, at the request of Bishops Green and Wright, plaintiff went to Philadelphia, Pennsylvania, to attend the trial of an action which Sims had brought against Bishop Green. He conferred with Mr. Pokorny and Mr. Alexander, a Philadelphia lawyer, who was in active charge of the litigation. He sat in on that trial for a few days.

Defendants do not dispute the fact that services, which were beneficial to the Church, were performed by plaintiff. They claim that plaintiff has failed to show that he was employed by any person or group which had the authority to bind the Church or any of its subdivisions. Liability of unincorporated associations for contracts depends upon the application of the principles of the law of agency (*McCabe* v. *Goodfellow,* 133 N. Y. 89). A principal who, with knowledge of the material facts surrounding his agent's unauthorized acts, receives and retains the benefits thereof thereby ratifies the same (2 C. J. S., Agency, § 49). Any acts or conduct of a principal in apparent approval or recognition of an agent's acts may constitute an implied ratification thereof (2 C. J. S., Agency, § 58). While it is true that plaintiff did not prove that the governing body of the Church, to wit, the General Conference or its representative, the Bishops' Council, formally retained him, the proof clearly establishes that the Bishops' Council sanctioned his retention by Bishops Wright and Green and availed themselves of the services he rendered in the New York and Philadelphia litigation. It was further proved that the services performed at the Special General Conference held at Little Rock were known and accepted by the General Conference and the Bishops' Council.

I find that the reasonable value of the services performed by plaintiff is $5,000 and direct judgment for this amount against D. Ward Nichols, as Bishop of the First Episcopal District and as presiding officer of each of the annual conferences within said episcopal district. There was no proof that plaintiff was retained by defendant, Nichols, in his individual capacity and the action as against him was discontinued on consent. Thirty days' stay. Sixty days to make a case, judgment to be submitted on notice.