### Application of RECONSTRUCTION FINANCE CORP.

### In re HARRISONS & CROSFIELD, Limited.

United States District Court
S. D. New York.
July 30, 1952.

Harold E. Jacobsen, New York City, for petitioner, Charles R. L. Hemmersley, Hoboken, N. J., and Abram Glaser, New York City, of counsel.

Donovan, Leisure, Newton, Lumbard & Irvine, New York City, for respondent. Burr F. Coleman, New York City, of counsel.

WEINFELD, District Judge.

Petitioner, Reconstruction Finance Corporation, moves to vacate a notice of arbitration served upon it by respondent, Harrisons & Crosfield, Ltd., and permanently to restrain the proposed arbitration proceeding. The respondent cross moves for the dismissal of the petition and seeks, pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 4, an affirmative order directing the petitioner to proceed to arbitration, the controversy being otherwise one over which the Court would have jurisdiction.

Petitioner, a wholly-owned Government Corporation, is the statutory successor of Rubber Reserve Company. On December 6, 1941, Rubber Reserve Company as buyer entered into five written contracts with Pagel, Horton & Co., Inc., for the purchase of various quantities of crude rubber to be shipped to the United States from the Netherlands East Indies. The contracts were, so far as here material, identical in form and are so treated by the parties. Although Pagel, Horton & Co., Inc., was described therein as "Seller," payment for the rubber was to be made not to it, but to the respondent herein, Harrisons & Crosfield, Ltd., described in the contract as the "Eastern Shipper," by letter of credit to be furnished in its favor by the Rubber Reserve Company. Harrisons & Crosfield, Ltd., although not a party to the contract, was the actual shipper of the rubber. Payment to it was conditioned upon the presentation of shipping documents transferring title to the buyer to include "on-board" bills of lading of ocean-carrying vessels destined for United States ports, or local or through bills of lading endorsed "on-board" by ocean-carrying vessels destined for United States ports. Each contract provided for delivery by January 31, 1942. Rubber Reserve Corporation issued the letters of credit as required by the contracts, but subsequently, and while the cargo of rubber was in transit or on dock, a portion was destroyed by enemy action or otherwise lost before it could be delivered on board an ocean carrier destined for a United States port. In consequence, Harrisons & Crosfield, Ltd., was unable to present the necessary on-board bills of lading and subsequently was required to refund to an intermediate bank the purchase price for the destroyed rubber. Respondent now claims it is entitled to receive from Reconstruction Finance Corporation, as successor to Rubber Reserve Company, payment

for this rubber by reason of the latter's failure to place war risk and marine insurance upon the shipment as required by the contracts.

Each contract also contained the following clause:

"10. Failing amicable settlement, all claims, disputes or controversies arising under or in relation to this contract shall be determined by arbitration under the Temporary Procedure for Arbitration between Eastern Shippers, American Dealers, American Consumers, and the Rubber Reserve Company approved by Rubber Reserve Company, September 12, 1941, and such Procedure shall be considered part hereof as if herein set forth in full."

As already noted, the respondent is designated in the contracts as the Seller's Eastern Shipper, and, additionally, has succeeded to the right of Pagel, Horton & Co., Inc., by formal assignment and has initiated these proceedings for arbitration in its own name and on the strength of the assignment. Petitioner challenges the right of respondent to invoke arbitration.

At the outset the respondent asserts that petitioner's application for a stay may not be granted since the Federal Arbitration Act, unlike the New York State Civil Practice Act, § 1458, does not expressly grant authority for a stay of arbitration. The petitioner, recognizing this possible infirmity, requests the Court to treat its application as a suit for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and contending it would suffer irreparable injury if compelled to proceed to arbitration, asks that the stay be granted as incidental to the main relief. The basic questions have been so fully presented and are necessarily involved in the consideration of the respondent's cross motion to compel arbitration under § 4 of the Arbitration Act that I believe the

issues should be disposed of on the merits rather than on any narrow procedural ground.

 The first ground on which petitioner relies to defeat arbitration is that the contracts were for the exclusive benefit of Rubber Reserve Company, the buyer, and Pagel, Horton & Co., Inc., the seller, and were intended to be personal as between them; that since the respondent was not a party thereto, the assignment does not permit it to proceed under the arbitration clause. Petitioner points to various provisions of the contracts as requiring personal performance on the part of Pagel, Horton & Co., Inc., including the duty to declare the particular shipments and the name of the vessel; to reimburse Rubber Reserve Company to failure to do so; to refund to Rubber Reserve Company the amount of additional insurance expense; to pay for specified loss or damage resulting from delay in shipment; and the right of Pagel, Horton & Co., Inc., to substitute another shipper in the event of nonperformance by Harrisons & Crosfield, Ltd. Finally, it asserts that Pagel, Horton & Co., Inc., was made primarily responsible for the full performance of respondent's obligations. The Court believes that these duties were not so unique or personal as to preclude assignment. Certainly, an assignee was as qualified to perform them as an assignor. No particular skill was required or was performance based upon any relationship of personal confidence between the contracting parties.[1] Essentially, the contracts were for purchase and sale of merchandise and were freely assignable. Their assignment to respondent, independent of other factors, carried with it the right as an assignee to invoke the arbitration clause.[2]

There are other factors which negate petitioner's contention that the arbitration clause was intended to be personal as be-

1. Canister Co. v. National Can Corporation, D.C., 71 F.Supp. 45; Meyer v. Washington Times Co., 64 App.D.C. 218, 76 F.2d 988.

2. Matter of Lipman v. Haeuser Shellac Co., 289 N.Y. 76, 43 N.E.2d 817, 142 A. L.R. 1088; Matter of Hosiery Mfrs'

Corp. v. Goldston, 238 N.Y. 22, 143 N.E. 779; In re Lowenthal, 199 App.Div. 39, 191 N.Y.S. 282, affirmed 233 N.Y. 621, 135 N.E. 944; Bernstein Shipping Co. v. Tidewater Commercial Co., Inc., D.C., 84 F.Supp. 948.

tween the signatories to the contracts. The contracts are on printed forms which refer in many places to the "Eastern Shipper" and the arbitration clause itself incorporating by reference as it does "The Temporary Procedure for arbitration between Eastern Shippers * * * and the Rubber Reserve Company" indicates that arbitration was contemplated in the event of disputes between shippers and the Rubber Reserve Company. Significantly, the contracts establish that the Eastern Shipper, the respondent herein, in addition to its right to receive payment under specified conditions also assumed obligations which required it to make payments and advances for freight and other charges for the buyer's account. It is thus clear that there is nothing personal in the contracts and that the respondent, as assignee, stands in the shoes of the original seller.[3]

■ The petitioner next urges that the parties intended to limit arbitration to disputes involving quality, quantity, weight, condition and packing of merchandise and it was their purpose to exclude therefrom questions pertaining to war risk insurance or marine insurance.[4] However, the arbitration clause prescribing arbitration as the medium for the determination of "all claims, disputes or controversies arising under or in relation to this contract" is all-inclusive. It commits to arbitration every dispute under the agreement, whatever its nature.

Moreover, the "Temporary Procedure" which prescribes the mechanics to be followed in the event of arbitration negates rather than supports the limitations suggested by the petitioner. Thus, § 2 of the "Temporary Procedure" mentions "disputes of any nature" and § 5 refers to "a dispute regarding any question other than quality or condition of rubber," thereby clearly evidencing that the scope of the arbitration was not in any way confined. Its scope cannot be circumscribed on the assumption that had the parties taken account of the particular controversy which has arisen they would have excluded it. The short and simple answer is that the broad and general language forbids any such limitation.[5]

Finally, petitioner contends any claim of respondent is barred by the applicable statute of limitations and for this reason arbitration should be denied. There is a dispute as to whether the statute has, in fact, run. In any event, the objection is without merit and the validity of this defense cannot be decided on this motion.

■ It has been held that in a proceeding to compel arbitration under § 4 of the Federal Arbitration Act only two issues are presented to the Court: (1) The making of the arbitration agreement; and (2) The failure, neglect or refusal to perform the same.[6] The New York Courts in interpreting the substantially similar provision of § 1450 of the Civil Practice Act, which the Federal Act "closely follows,"[7] are unanimous in holding that all questions other than the making of the agreement and the refusal to arbitrate are not before the Court on a motion to compel arbitration but must be decided by the arbitrators.[8] While there are no precedents based on the defense of the statute of limitations, the cited cases dealing with issues such as fraud, rescission or cancellation of the agreement, the same principle is applicable in the instant case. Though in-

3. See Williston on Contracts, Revised Edition, § 419.

4. A somewhat similar contention made in Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 988, was rejected.

5. Lewittes & Sons v. United Furniture Workers, D.C., 95 F.Supp. 851; Matter of Lipman v. Haeuser Shellac Co., supra (footnote No. 2) p. 80.

6. In re Worcester Silk Mills Corp., D.C., 50 F.2d 966.

7. In re Utility Oil Corporation, D.C., 10 F.Supp. 678, 680.

8. Matter of Pierce v. Brown Buick Co., Inc., 258 App.Div. 679, 17 N.Y.S.2d 889, affirmed 283 N.Y. 669, 28 N.E.2d 400; Matter of Lipman v. Haeuser Shellac Co., supra; Matter of Kahn (National City Bank), 284 N.Y. 515, 523, 32 N.E.2d 534; Matter of Behrens v. Feuerring, 296 N.Y. 172, 177, 71 N.E.2d 454.

volving questions of law, the issue of whether or not the statute of limitations is a bar to the proceeding, is, nevertheless, within the competence of the arbitrators.

It follows that, aside from any procedural ground, the petition must be dismissed and the respondent's cross application, that the petitioner be directed to proceed with the arbitration, granted.

Settle order on notice.