**RECONSTRUCTION FINANCE CORP. v. HARRISONS & CROSFIELD, Limited.**

No. 177, Docket 22581.

United States Court of Appeals
Second Circuit.

Argued April 7, 1953.

Decided May 8, 1953.

Clark, Circuit Judge, dissented.

Harold E. Jacobsen, New York City, (Abram Glaser, New York City, of counsel), for petitioner-appellant.

Donovan, Leisure, Newton, Lumbard & Irvine, New York City (Burr F. Coleman, New York City, of counsel), for respondent-appellee.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. This is an appeal from an order (1) dismissing the petition of the Reconstruction Finance Corporation, the plaintiff,[1] which sought an order permanently enjoining defendant from arbitrating a claim asserted against plaintiff and (2) granting defendant's cross-petition which sought an order directing plaintiff to proceed with arbitration in accord with a request for arbitration served on plaintiff by defendant.[2] The facts are stated in Judge Weinfeld's opinion, 106 F.Supp. 358, and need not here be repeated in detail. Plaintiff in its brief in this court says that the sole question it urges on this appeal is "whether the Court or the arbitrators should determine that the Statute of Limitations (or laches) has or has not barred the contractual right which the Appellee seeks to enforce." Briefly, then, for purposes of this appeal, the facts may be stated thus: In 1941, Rubber Reserve Company, a corporation wholly owned by the United States, made written contracts with defendant as the seller of crude rubber to be shipped from the Netherlands East Indies to the United States; the contracts obligated Rubber Reserve to take out insurance on these shipments, but it did not do so; some of the shipments were destroyed in transit by enemy action in 1942; defendant claims that, because of Rubber Reserve's failure to take out the insurance, defendant suffered a large financial loss; plaintiff, as the statutory successor of Rubber Reserve, succeeded to its rights, obligations and liabilities; each of the contracts with Rubber Reserve contains a clause which provides that, "Failing amicable settlement, all claims, disputes or controversies arising under or in relation to this contract shall be determined by arbitration"; "amicable settlement" having failed, defendant, on September 14, 1951, served on plaintiff a request for arbitration of its claim grounded on the foregoing.

2. Plaintiff's basic position is this: (a) Section 48 of the New York Civil Practice Act provides that an "action upon a contract obligation" must be commenced "within six years after the cause of action has accrued."[3] By statutory definition, for this purpose an "action" includes a "special proceeding."[4] The New York arbitration statute provides that an arbitration thereunder "shall be deemed a special proceed-

---

1. For convenience, we refer to petitioner-appellant as plaintiff and respondent-appellee as defendant.

2. The order is appealable. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Wilko v. Swan, 2 Cir., 201 F.2d 439, 441.

3. New York Civil Practice Act, § 48. It reads in part as follows:
"*Actions to be commenced within six years*. The following actions must be

commenced within six years after the cause of action has accrued:
"1. An action upon a contract obligation * * *."

4. Ibid., § 10. It reads in part as follows:
"*Application of article.* * * *
"The word 'action' contained in this article is to be construed, when it is necessary so to do, as including a special proceeding or any proceeding therein or in an action. * * *"

ing".[5] (b) The controversies which are here the subject of the proposed arbitration relate to alleged breaches, occurring in 1942, of the obligation of Rubber Reserve, under the 1941 contracts, to place insurance upon the shipments. (c) Those breaches occurred more than six years before plaintiff sought to initiate the arbitration by its notice of September 1951. (d) Any action by defendant on account of those breaches is therefore barred. (e) This bar covers not only a suit in court but also an arbitration, which is an "action upon a contract obligation". On this basis, plaintiff argues that there was no existing valid obligation when defendant asked for arbitration in September 1951, and that, accordingly, the district court erred in not preventing but, instead, ordering arbitration, since, as a result of the order, the arbitrators may give defendant an award despite the bar of the limitations statute.[6]

■ Plaintiff cites no decision, anywhere, relative to this question. The highest New York court has held that the New York arbitration statute "only requires the contract to have been made and does not require that it shall continue to be in existence", with the consequence that the issue of cancellation is for the arbitrators.[6a] That court has also held that whether "the respondents were let out of the contract when the war excluded performance thereof by the appellant" was "an issue which was clearly * * * described in the * * * arbitration clause" and therefore properly within the arbitration ordered by the lower court.[7] Those recent decisions are in line with our own, interpreting the federal arbitration Act as designed to favor arbitration,[8] and with the provisions of that Act—9 U.S.C. § 4—which make it clear that a federal court, in a suit asking it to compel arbitration, should (except as noted below in discussing laches) deal with no issues except (1) the making of an agreement to arbitrate, and (2) the failure, neglect or refusal of the other party to perform that agreement.

---

5. Ibid., § 1459. It reads in part as follows:

"*Arbitration a special proceeding.* Arbitration of a controversy under a contract or submission described in section fourteen hundred forty-eight shall be deemed a special proceeding, of which the court specified in the contract or submission, or if none be specified, the supreme court for the county in which one of the parties resides or is doing business, or in which the arbitration was held, shall have jurisdiction."

6. Of course, many pure issues of "law" may be left for unreviewable decision by the arbitrators. See e.g., Wenger & Co. v. Propper Silk Hosiery Mills, 239 N.Y. 199, 201, 146 N.E. 203; Mutual Benefit Health & Accident Association v. United Casualty Co., 1 Cir., 142 F.2d 390, 393; Corbin, Contracts (1951), Sec. 1437.

6a. Matter of Lipman, 289 N.Y. 76, 78, 43 N.E.2d 817, 819, 142 A.L.R. 1088.

7. Matter of Behrens, 296 N.Y. 172, 177, 71 N.E.2d 454, 456.

We think those recent decisions have left little, if any, vitality in the earlier decision in Matter of Kramer & Uchitelle, 288 N.Y. 467, 43 N.E.2d 493, 495, 141 A.L.R. 1497, (severely criticized in Judge Lehman's dissenting opinion), and that they lend no support to the dictum in Raphael v. Silberberg, 274 App.Div. 625,

86 N.Y.S.2d 421 (to the effect that "Proceedings to enforce arbitration * * * presuppose the existence of a valid and enforceable contract at the time the remedy is sought").

The New York ruling as to whether the application of the Statute of Frauds is an issue for the arbitrators is perhaps in some doubt. See, e.g., Exeter Mfg. Co. v. Marrus, 254 App.Div. 496, 5 N.Y. S.2d 438; Tanenbaum Textile Co., Inc., v. Schlanger, 287 N.Y. 400, 40 N.E.2d 225; Matter of Albrecht Chemical Co., 298 N.Y. 437, 440, 84 N.E.2d 625; Matter of Nehemiah Gitelson & Sons, 274 App. Div. 480, 482, 84 N.Y.S.2d 605; Arthur Philip Export Corp. v. Leatherstone, Inc., 275 App.Div. 102, 104, 87 N.Y.S.2d 665; Airedale Worsted Mills, Inc., v. Bonnie Classics, Inc., 198 Misc. 259, 98 N.Y.S.2d 353, 354; Bellmore Dress Co., Inc., v. Tambro Fabrics Corp., Sup., 115 N.Y.S.2d 11. But the effect of the Statute of Frauds on an arbitration clause is significantly different from the effect on such a clause of the statute of limitations.

8. See, e.g., Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 985; Wilko v. Swan, 2 Cir., 201 F. 2d 439.

■ Making all assumptions (*arguendo*) most favorable to Reconstruction Finance Corporation,[9] we think defendant must win on the issue of the statute of limitations. Considering an arbitration as "An action upon a contract obligation", within the meaning of the New York limitations statute, we then ask upon what "contract obligation" the "action"—*i. e.*, the arbitration —is grounded. The answer is the "contract obligation," contained in each contract, to submit to arbitration "all claims, disputes or controversies under this contract." The "claim" or "controversy" which defendant seeks to have submitted to arbitration relates to a different "contract obligation," said to have been breached by Reconstruction Finance Corporation's predecessor, Rubber Reserve, *i. e.*, the obligation to procure insurance. But, for purposes of the provision of the six-year statute applicable to arbitration as an "action," the crucial "contract obligation" consists of the obligation to arbitrate. The New York statute provides that the "action"—here the arbi-tration—must be begun "within six years after the cause of action has accrued". The "cause of action" for breach of the obligation to arbitrate did not "accrue" until defendant recently asked Reconstruction Finance Corporation to arbitrate the "controversy," and Reconstruction Finance Corporation then refused to comply. Wherefore, we hold that (making all the assumptions we previously noted) the statute of limitations had not barred the arbitration regarded as an "action." The effect of the limitations statute on the asserted obligations to obtain insurance will be determined by the arbitrators.

■■ 3. There remains the possibility that defendant's right to arbitration is barred by laches. For as a court, when asked to enter an order, under the federal Arbitration Act, requiring a party to arbitrate as he promised, sits "in equity,"[10] passing on a prayer for specific performance, it must take into account equity considerations,[11] and notably laches.[12] We

9. (a) We assume, *arguendo*, that New York decisions interpreting the New York arbitration statute should be followed by us in interpreting the federal arbitration statute. But cf. Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381, 383.

(b) We assume, *arguendo*, that, on the facts before the district court, if the defendant had begun a suit in court against Reconstruction Finance Corporation, based on the alleged failure of Rubber Reserve to place insurance, the six-year provision of the New York limitations statute would have afforded Reconstruction Finance Corporation a complete defense. (Judge Weinfeld in his opinion said there "is a dispute as to whether the statute has, in fact, run." [106 F. Supp. 361.] Other statements in that opinion indicate that the parties had referred to facts not in the record before us. Confining ourselves to that record, we see no dispute as to facts affecting the running of the statute of limitations.)

(c) We assume, *arguendo*, that, although the federal arbitration statute governs here for jurisdictional purposes, the New York statute of limitations applies since there is no federal statute of limitations. Cf. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, and Cope v. Anderson, 331 U. S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602.

(d) Accordingly, we assume, *arguendo*, that the arbitration which defendant seeks is an "action upon a contract obligation", although recently we said that, under the federal arbitration statute, an arbitration is not a "suit" but "the performance of a contract providing for the resolution of controversy without suit." Son Shipping Co., Inc., v. De Fosse & Tanghe, 2 Cir., 199 F.2d 687, 689.

10. Note these words in the federal arbitration statute, 9 U.S.C. § 2: " * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or *in equity* for the revocation of any contract." (Emphasis added.)

11. Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 986–987; cf. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

See Matter of Feuer Transportation, Inc., 295 N.Y. 87, 91–92, 65 N.E.2d 178, 180: "Under the new statute arbitration became both orderly and enforcible and was made subject in effect to a decree for specific performance. * * * To work well it must operate with a minimum of delay and with all the flexibility which equity can give it. * * * Proceedings of this kind are equitable in character, and the practice of equity as to relief should be followed."

12. Cf. as to 9 U.S.C. § 3 re "default," Almacenes Fernandez, S. A., v. Golodetz,

have therefore appropriately said that a demand for arbitration must be made within a "reasonable time." [13] And the same equitable considerations are active when, as here, one party to an arbitration agreement asks that arbitration be enjoined because of lapse of time.

 Laches may be operative with respect to the obligation to arbitrate although with respect thereto the statute has not run.[14] But a heavy burden rests on Reconstruction Finance Corporation, as the party setting up laches as a defense, to establish facts which constitute laches in the particular circumstances of this particular case. Judge Phillips admirably stated the rule in Shell v. Strong, 10 Cir., 151 F.2d 909, 911: "Lapse of time alone does not constitute laches. Delay will not bar relief where it has not worked injury, prejudice, or disadvantage to the defendant or others adversely interested. Since laches is an equitable defense, its application is controlled by equitable considerations. It cannot be invoked to defeat justice, and it will be applied only where the enforcement of the right asserted will work in justice. * * * Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, a court of equity will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the complaint or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove circumstances making it inequitable to apply laches to his case." As here plaintiff did not discharge its burden, we affirm.

It is suggested that this result will discourage the insertion of arbitration clauses in contracts, for (it is said) parties will fear that they will be compelled to let arbitrators decide controversies after the lapse of (say) thirty or fifty years. To this argument there are two answers: (a) If the delay is accompanied by other circumstances, as a result of which serious prejudice would follow if arbitration were permitted, then laches can be successfully advanced in court to block any arbitration. (b) More important, the parties to a contract embodying an arbitration clause can, of course, easily put in it an "express time limitation." [15]

CLARK, Circuit Judge (dissenting).

As Judge Frank's opinion shows, there seems to be no exact precedent for a decision here; we have been cited to none and have discovered none. The closest author-

---

2 Cir., 148 F.2d 625, 627–628; Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 989.

13. Son Shipping Co., Inc., v. De Fosse & Tanghe, 2 Cir., 199 F.2d 687, 689.

14. That it is not necessarily operative when the statute has run, see e. g., Northern Pac. Ry. Co. v. Boyd, 228 U.S. 482, 508–510, 33 S.Ct. 554, 57 L.Ed. 931; Southern Pac. Co. v. Bogert, 250 U.S. 483, 488–490, 39 S.Ct. 533, 63 L.Ed. 1099. In Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743, the Court said: "Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that 'laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties.' Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738; see Southern Pacific Co. v. Bogert, 250 U.S. 483, 488, 489, 39 S.Ct. 533, 535, 536, 63 L.Ed. 1099. And so, a suit in equity may lie though a comparable cause of action at law would be barred."

15. Son Shipping Co. v. De Fosse & Tanghe, 2 Cir., 199 F.2d 687, 689; Cf. River Brand Rice Mills, Inc., v. Latrobe Brewing Co., 305 N.Y. 36, 41, 110 N.E.2d 545.

ity is our own statement in Son Shipping Co. v. De Fosse & Tanghe, 2 Cir., 199 F.2d 687, 689: "We are aware that the time within which arbitration may be demanded may be of great importance to the parties who have by contract agreed to have their differences so determined, especially to a shipowner. But unless they see fit to condition their agreement by an express time limitation, a demand *within a reasonable time, as here,* is not barred." (Italics supplied.) In addition, the New York courts have several times asserted that the enforceability of an arbitration clause presupposes "the existence of a valid and enforceable contract at the time the remedy is sought." In re Kramer & Uchitelle, 288 N.Y. 467, 471, 43 N.E.2d 493, 495, 141 A.L.R. 1497; Raphael v. Silberberg, 274 App.Div. 625, 86 N.Y.S.2d 421; and see 9 U.S.C. § 3, also N.Y.C.P.A. § 1450, allowing a stay for reference to arbitration only "providing the applicant for the stay is not in default in proceeding with such arbitration."

The lack of precedent leaves the issue fairly debatable. I must confess that Judge Frank's opinion, arguing persuasively that laches cannot be ignored, leads me to a different conclusion, to wit, that demand for arbitration is here unreasonably delayed. For a delay of over nine years where the fair analogy of the limitation statute—so usual a general yardstick of laches—is only six, surely shows laches. This would seem to be so whatever artificial rules of burden of proof or presumption are resorted to; but the result must follow on applying the very rule set forth in Judge Frank's opinion. Since the limitation period starting from the time of plaintiff's alleged original breach had long since elapsed when defendant demanded arbitration, the burden was on the defendant "to aver and prove circumstances making it inequitable to apply laches to his case." In placing that burden on plaintiff here, the opinion presumably views the statutory period as running from the time of plaintiff's refusal to arbitrate. But to determine the timeliness of a demand for arbitration we must necessarily take the period from the breach to the demand for arbitration; to start the statute running anew by plaintiff's refusal to arbitrate thereafter is surely to make of limitation a "topsy-turvy land" such as was charted by Judge Frank in his notable dissent in Dincher v. Marlin Firearms Co., 2 Cir., 198 F.2d 821, 823. Therefore, though not with complete certainty, I vote to reverse, a result possibly desirable in the long run as not pressing the useful and desirable device of arbitration to unreasonable and unexpected extremes.