**Joseph F. MANGAN, as Trustee of the Local 807 Labor–Management Pension Fund, Plaintiff,**

v.

**OWENS TRUCKMEN, INC., Owens Transportation Corp., Kendia Realty Corp., Richard K. Owens, Richard F. Owens, Anthony A. Castronovo and Julia Castronovo, Defendants.**

**Nos. CV 84–2540 (RJD), CV 86–0763 (RJD).**

United States District Court, E.D. New York.

May 26, 1989.

James M. O'Neill, O'Connor & Mangan, P.C., Long Island City, N.Y., for plaintiff.

Alan M. Klinger, Curtis C. Mechling, Strook & Strook & Lavan, New York City, for defendant Owens Truckmen, Inc.

MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff Joseph Mangan, as trustee of the Local 807 Labor–Management Pension Fund ("the Fund"), moves to vacate an arbitration award entered on February 12, 1986. Defendant Owens Truckmen, Inc. ("Truckmen") cross-moves to confirm in

part and modify in part that award. For the reasons set out below the Fund's motion to vacate is granted and Truckmen's motion is denied.

## BACKGROUND

The Fund is a multi-employer pension plan[1] that receives its contributions from employers who are signatories to collective bargaining agreements with Local 807 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union"). Defendant Truckmen was a contract trucking carrier that employed drivers who were members of the Union. Pursuant to a collective bargaining agreement between Truckmen and the Union, Truckmen contributed to the Fund's multi-employer pension plan.

In January of 1982, Truckmen effected a sale of its assets to Owens New World Trucking, Inc. ("New World"). Prior to the consummation of the sale, Richard Owens, one of Truckmen's owners, discussed that sale and its consequences with Joseph Mangan, who is the President of the Union and a trustee of the Fund. Those discussions resulted in an agreement pursuant to which New World agreed to employ the Truckmen workers who were not retiring.

Notwithstanding this agreement, and the agreement by New World to assume many of Truckmen's obligations, the Fund determined that, as a result of the sale and Truckmen's withdrawal from the Fund, Truckmen had incurred "withdrawal liability" of $177,403.00 under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.* (1982). By letter dated July 26, 1982, the Fund formally notified Truckmen that Truckmen was liable and that the sum of $177,403.00 was due. The letter also informed Truckmen of the time limitation for demanding the arbitration procedure required by Section 4221(a)(1) of MPPAA, and set forth an installment payment schedule for the monies owing pursuant to MPPAA.[2]

Two months later, on September 23, 1982, Truckmen responded by letter and took the position that its sale to New World complied with the MPPAA's "sale of assets" exemption and thus it was absolved of any withdrawal liability. The Fund did not respond. Instead, it commenced an action in this Court seeking to enjoin Truckmen from disposing of any of its assets. Truckmen did not answer the complaint immediately. Rather, it obtained various extensions of time to do so until May 1983, during which period it made a written presentation to the Fund seeking once again to establish the validity of the sale of assets exemption it had asserted.

After the Fund rejected Truckmen's presentation, Truckmen answered the complaint and counterclaimed for a declaratory judgment that it was entitled to the sale of assets exemption. Shortly thereafter, Truckmen moved (1) for dismissal of the complaint on the ground that the named plaintiff lacked capacity to sue; and (2) for summary judgment on its counterclaim seeking a declaration that it was entitled to the sale of assets exemption. On May 25, 1984, then Chief Judge Weinstein, to whom this action was originally assigned, dismissed without prejudice plaintiff's complaint on the ground of lack of standing.

Following the Fund's filing of another complaint, this time with the proper party plaintiff, Truckmen answered and counterclaimed, denying that it had withdrawal liability and arguing that the relevant parts of the MPPAA were unconstitutional. Shortly thereafter, each of the parties

---

**1.** A multi-employer pension plan is a plan to which more than one employer is required to contribute and which is maintained pursuant to one or more employee organizations and more than one employer. 29 U.S.C. § 1301(a)(3)(A), (B) (1988).

**2.** The text of the letter provided, in pertinent part:

> Should you dispute this determination you have a right to appeal this decision to arbitration in accordance with the labor arbitration rules of the American Arbitration Association. This procedure must be followed should any dispute with regard to the following arise. All disputes must be resolved within the time period set forth in Section 4221(a)(1) of the Multiemployer Pension Plan Amendments Act of 1980.

moved for summary judgment. On July 3, 1984, the Court denied Truckmen's motion, finding that there existed material issues of fact regarding Truckmen's asserted sale of assets exemption. After denying the motion on the record, Judge Weinstein inquired whether the case was going to proceed to arbitration. Counsel for the Fund asserted that the time to request arbitration had expired. Judge Weinstein then ruled that there was a question of fact whether there was a "stalling" of the time within which Truckmen had to request arbitration.

Apparently confused regarding the precise nature of Judge Weinstein's rulings, the Fund and Truckmen sought clarification on two issues: whether the Court was ordering the parties to proceed to arbitration and whether or not the timeliness of an arbitration demand was for the Court or the arbitrator to decide. Judge Weinstein replied, first, that he was merely denying the motion for summary judgment and not ordering the parties to arbitration, and, second, that he was not deciding at that time whether the question of timeliness was for the Court or the arbitrator to decide. The Judge then ordered that the case be put on the inactive calendar pending any arbitration, subject to either party's motion to restore it.

On July 24, 1984, Truckmen made its demand for arbitration to the American Arbitration Association ("AAA"). In response, the Fund argued to the AAA that Truckmen's request was untimely. By letter dated September 7, 1984, the AAA responded by stating that the issue should be decided by the arbitrator and thus the arbitration should proceed absent a Court-ordered stay. By letter dated October 26, 1984, Truckmen requested a pre-hearing

conference with the arbitrator, Marvin Schwartz, Esq. At that conference the parties discussed the issues to be decided in the arbitration. The timeliness issue was discussed and the arbitrator stated that he would read the court papers on that issue and would consider all of the matters discussed.

The Fund then moved before Judge Weinstein to dismiss, arguing that Truckmen's arbitration demand was untimely. The Fund also moved for immediate payment of all monies that the Fund claimed were owing. On December 4, 1984, Judge Weinstein reserved decision on the timeliness issue pending the Arbitrator's decision, observing that "the arbitrator's decision may avoid the need for any further decision in the case." The Judge also reinstated the case on the active calendar and required Truckmen to post interim security.

The parties then proceeded to arbitration, where three issues were hotly contested: first, whether the arbitrator was empowered to decide the timeliness issue; second, whether Truckmen's demand for arbitration was timely; and third, whether Truckmen was entitled to the "sale of assets" exemption. After presiding over several days of testimony and argument, and after receiving briefs from the parties on the contested issues, Arbitrator Schwartz rendered a 104 page decision, finding for Truckmen on all of the issues.[3] Arbitrator Schwartz first found that arbitration is the proper forum for resolving issues of the timeliness of a party's demand for arbitration. *Mangan and Owens Truckmen, Inc.*, 7 EBC 1353, 1357.[4] Next, Arbitrator Schwartz found that Truckmen's request for arbitration was untimely and that its

**3.** Arbitrators in most garden-variety commercial disputes are discouraged from making elaborate written findings. *See* AAA's "A Guide for Commercial Arbitrators," at 26 (1988) ("Commercial arbitrators are not required to explain the reasons for their decisions. As a general rule, the award consists of a brief direction to the parties on a single sheet of paper. One reason for brevity is that written opinions might open avenues for attack on the award by the losing party."). MPPAA arbitrators, however, are required to render findings of fact and conclu-

sions of law. *See* 29 C.F.R. § 2641-7 (1988) (arbitrator's written award shall "[s]tate[ ] the basis for the award, including such findings of fact and conclusions of law (which need not be designated as such) as are necessary to resolve the dispute").

**4.** The Arbitrator's decision and award is reported in this publication, known as the Employment Benefit Cases Reporter.

arguments regarding waiver, estoppel, and tolling of the time limits were unavailing, but determined that "equitable considerations" present in the case nevertheless entitled Truckmen to arbitrate. *Id.* at 1787. Finally, Arbitrator Schwartz determined that Truckmen was entitled to the MPPAA's sale of assets exemption.

Truckmen then moved before Judge Weinstein to modify the Arbitrator's decision to include an award of attorneys' fees and to confirm the decision and award as modified. The Fund responded by commencing a separate action seeking to vacate the arbitrator's decision. Both of the actions were then re-assigned to me, and were later consolidated.

## STANDARD OF REVIEW

■ The extent of this Court's review of Arbitrator Schwartz's decision is well-defined and narrowly circumscribed. With regard to factual findings, MPPAA provides that "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c). *See United Retail & Wholesale Emp. v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 142 (3d Cir.1986) (Title 29 U.S.C. § 1401(c) "represents a considered decision by Congress that district courts not be authorized to second-guess arbitrators' decisions"), *aff'd by equally divided Court sub nom. Pension Ben. Guar. Corp. v. Yahn & McDonnell, Inc.*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). Since the MPPAA provides that withdrawal liability arbitrations shall be conducted and enforced in the same manner as those arbitrations "carried out under Title 9, United States Code," 29 U.S.C. § 1401(b)(3), the standard of review is thus the same as that which traditionally obtains in a Title 9 arbitration. One basis for setting aside an arbitration award under Title 9 is the non-statutory ground of "manifest disregard of the law," which was introduced by the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–188, 98 L.Ed. 168 (1953). According to Judge Friendly, this ground "presuppose[s] 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978) (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir.1961). Put another way,

> The [alleged] error [forming the basis for the set aside request] must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.... The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.

*Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933–934 (2d Cir. 1986), *cited with approval in Matter of Arbitration No. AAA 13–161–0511–85*, 867 F.2d 130, 133 (2d Cir.1989). *See also I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424–32 (2d Cir.1974) (discussing "manifest disregard" standard); *Office of Supply, Gov. of Republic of Korea v. New York Nav. Co., Inc.*, 469 F.2d 377, 380 (2d Cir.1972) (review under manifest disregard standard is "severely limited").

## DISCUSSION

Our Court of Appeals recently reiterated the central aims of Congress in enacting the MPPAA:

> MPPAA was enacted by Congress in September 1980 for "[t]he primary purpose of ... protect[ing] retirees and workers who are participants in [multi-employer] plans against the loss of their pensions." In particular, Congress was concerned that as of 1980:
>
> (1) the magnitude of the risk and the potential exposure of the [multi-employer plan] system are intolerably high; and (2) existing law and particularly the plan termination insurance provisions are inadequate to assure financially sound [multi-employer] plans, may accelerate declines and further weaken and hasten

the termination of financially weak plans. . . . [T]here are serious defects in current law which undermine the benefit security of [multi-employer] plan participants.

*Park South Hotel Corporation v. New York Hotel Trades Council*, 851 F.2d 578, 580 (2nd Cir.1988) (quoting *ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 880–81 (2d Cir. 1988)). Given these concerns, Congress established a detailed statutory scheme to determine pension fund liability when a company withdraws from a pension plan. First, Congress defined when a "withdrawal" occurs: an employer withdraws from a pension plan when it permanently ceases to have an obligation to contribute under the plan or permanently ceases all operations covered under the plan. 29 U.S.C. § 1383(a). Congress then went on to establish both a method for determining the amount of withdrawal liability and a scheme whereby the plan must inform the employer that the employer is liable: "[a] withdrawal liability is a contributing employer's proportionate share of the unfunded vested liability existing in a [multi-employer] pension plan at the time of the employer's complete or partial cessation of obligation to contribute to the plan." *Central States Pension Fund v. 888 Corp.*, 813 F.2d 760, 762 n. 2 (6th Cir.1987) (citing 29 U.S.C. §§ 1381(b), 1382, 1391(b), (d)). As soon as practicable after an employer's withdrawal, the plan sponsor must send the employer a formal notice of the amount of the liability and demand payment according to a schedule set by the plan. 29 U.S.C. § 1399(b)(1). Thereafter, if an employer objects to the amount or existence of liability, it must ask the plan sponsor within ninety days for a review of its assessment of liability. 29 U.S.C. § 1399(b)(2)(A).

Congress spoke clearly regarding the forum in which certain withdrawal liability determinations were to take place and the time limitations for seeking such determinations:

> *Any dispute* between an employer and the plan sponsor of a multiemployer plan concerning a determination made under section 1381 through 1399 of this title *shall be resolved through arbitration.* Either party may initiate the arbitration proceeding within a 60–day period after the earlier of—
>
> (a) the date of notification to the employer under section 1399(b)(B) of this title, or
>
> (B) 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title. The parties may jointly initiate arbitration within the 180–day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

29 U.S.C. § 1401(a)(1)(A), (B) (emphasis added). These time limits, the Arbitrator correctly noted, are "crucial to the implementation of the law," because they "ensure[ ] that employers will not be able to avoid their financial obligations to [pension plans] through lengthy actions in the courts." *Mangan and Owens Truckmen, Inc.*, 7 EBC at 1386. So concerned was Congress that employers not tarry in seeking arbitration, that it enacted a rather severe default provision should employers not seek arbitration in a timely manner. Thus,

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under Section 4219(b)(1) shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a state or federal Court of competent jurisdiction for collection.

29 U.S.C. § 1401(b)(1). The purpose behind the strict time limits was explained by one of the House sponsors of the MPPAA:

> Because delinquencies of employers in making required contributions are also a serious problem for many multi-employer plans, we wish to make clear the public policy in this area, which this bill intended to further. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs upon plans. While contributions remain unpaid, the plan loses the benefit of investment income that could have been earned if the past due amounts had been re-

ceived and invested on time. Moreover, additional administrative costs are incurred in detecting and collecting delinquencies. Attorney's fees and other legal costs arise in connection with collection efforts.

These costs detract from the ability of plans to formulate or meet funding standards and adversely affect the financial health of plans. Participants and beneficiaries of plans as well as employers who honor their obligation to contribute in a timely fashion bear the heavy cost of delinquencies in the form of lower benefits and higher contribution rates. Moreover, in the context of this legislation, uncollected delinquencies can add to the unfunded liability for all employers. *Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly, and complex litigation.*

... This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously ...

*These same principles apply to a plan's claim for employer withdrawal liability assessments in accordance with this legislation.*

Remarks of Rep. Thompson, 126 Cong. Rec. 23039 (August 25, 1980) (emphasis added).

Notwithstanding the apparent mandatory nature of the arbitration requirement of certain withdrawal liability determinations, certain narrow exceptions have been carved out by the courts, including our Court of Appeals. For example, in *T.I.M. E.–D.C. v. Management–Labor Welfare & Pension Funds,* 756 F.2d 939, 945 (2d Cir. 1985), the Court noted that "the arbitration provisions of MPPAA do not constitute a bar to federal jurisdiction. Rather, the requirement of exhaustion of administrative remedies in this context is a prudential matter within our discretion." The Court held that arbitration was not required where the question presented involved a section of ERISA other than sections 1381

to 1399. *Id.* The Court reasoned that exhaustion is most often excused "when the nonjudicial remedy is inadequate, statutory interpretation is required, or there is a constitutional question," *id.,* whereas exhaustion should be required when a case turns on questions of fact requiring an arbitrator's expertise. *Id.*

Similarly, in *Park South Hotel Corporation v. New York Hotel Trades Council, supra,* 851 F.2d at 582, the Court, citing *T.I.M.E.–D.C., supra,* concluded that arbitration was not required where (1) legal issues of statutory construction rather than fact issues were involved; (2) the parties agreed that arbitration was not required; (3) the suit was filed before the time for invoking arbitration had expired; and (4) judicial economy would not be served by remanding the case. *See also Central States Pension Fund v. 888 Corp., supra,* 813 F.2d at 764; *I.A.M. National Pension Fund Benefit Plan C v. Stockton TRI Industries,* 727 F.2d 1204, 1207–10 (D.C. Cir.1984); *Republic Industries v. Teamsters Joint Council No. 83 Pension Fund,* 718 F.2d 628, 634 (4th Cir.1983); *Shelter Framing Corp. v. Pension Benefit Guar. Corp.,* 705 F.2d 1502, 1508 (9th Cir.1983); *Republic Industries v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 294 (3d Cir.1983); *T.I.M.E.–D.C., Inc. v. Trucking Employees of North Jersey Welfare Fund,* 560 F.Supp. 294, 301–03 (E.D.N.Y.1983).

The Fund argues that the Arbitrator acted in manifest disregard of the law in reaching each of his three conclusions: specifically, the Fund challenges the Arbitrator's finding (i) that he had the power to decide the timeliness issue; (ii) that Truckmen's request for arbitration could be heard; and (iii) that Truckmen was entitled to the "sale of assets" exemption.

■ The Fund's first argument requires little discussion. Because the statutory scheme provides that arbitration is mandated only for issues arising under sections 1381 through 1399 of Title 29, the Fund argues that the Arbitrator acted in manifest disregard of the law because the time

limitations derive from section 1401. In carefully considering and rejecting this argument, Arbitrator Schwartz reasoned that accepted rules of statutory construction supported the conclusion that the arbitration is the proper forum for resolving issues of the timeliness of a party's demand for arbitration. *Mangan and Owens Truckmen, Inc.*, 7 EBC at 1357. Specifically, the Arbitrator reasoned that section 1401 is inextricably intertwined with sections 1381 through 1399, and there is no suggestion in the legislative history that Congress wanted the issue of timeliness decided only by the courts. *Id.* The Arbitrator's legal conclusion on this issue, which has since been codified in regulations promulgated by the Pension Benefit Guarantee Corporation ("PBGC"), *see* 29 C.F.R. § 2641.2(c) (1988) (effective Sept. 26, 1985) (party that initiates arbitration bears burden of establishing before the Arbitrator that notice was timely), and which finds support in the case law, *see, e.g., Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 572 (2d Cir.1968) (arbitrator may decide issue of laches that relates to issue she must decide); *Lowry & Co. v. S.S. LeMoyne D'Iberville*, 253 F.Supp. 396, 299 (S.D.N.Y.1966) (Weinfeld, J.) (arbitrator to decide limitations issue), *app. dism'd*, 372 F.2d 123 (2d Cir.1967); *Application of Reconstruction Finance Corp.*, 106 F.Supp. 358, 361–62 (S.D.N.Y.1952) (Weinfeld, J.) (arbitrator may decide limitations issue), *aff'd sub. nom. Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd.*, 204 F.2d 366 (2d Cir.), *cert. denied*, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953), is an eminently reasonable one and thus hardly can be deemed to be in manifest disregard of the law. *See Merrill Lynch, Pierce Fenner & Smith v. Bobker, supra*, 808 F.2d at 936–37 (no manifest disregard of the law where arbitrators rejected terms and interpretations of SEC rule when considering them in conjunction with governing statute).

The Fund's argument regarding the timeliness of Truckmen's arbitration demand presents a closer question. In order to explore this issue properly, it is important to set out exactly what the Arbitrator decided. The Arbitrator concluded at the outset—and the parties agreed—that Truckmen's demand for arbitration was untimely. Truckmen argued, however, that arbitration was still warranted because, first, the time period within which it had to request arbitration had been tolled; second, the Fund waived its right to assert the expiration of the limitations period as a defense; and, finally, equitable principles warranted arbitration.

In its tolling argument, Truckmen contended that the filing of its counterclaim within the time limits tolled the running of the arbitration time clock because it contested the *fact* of its withdrawal liability and not merely the *amount* owed. In other words, after conceding that all disputes with regard to *amounts* of withdrawal liability must be arbitrated, Truckmen contended that not all disputes as to the *existence* of withdrawal liability were subject to the same requirement. After thoroughly examining the statute, its legislative history, and the relevant case law, Arbitrator Schwartz rejected this argument, reasoning that a contrary conclusion would be antithetical to the MPPAA's plain language and the prevailing case law, and would "frustrate Congress' purpose to avoid lengthy, costly and complex litigation for the collection of monies owed Pension Funds." *Mangan and Owens Truckmen, Inc.*, 7 EBC at 1364.

With regard to its waiver argument, which the Arbitrator noted had an equitable estoppel component, *id.* at 1365, Truckmen argued that the Fund waived arbitration by commencing court proceedings, by failing to assert that arbitration was the exclusive forum for withdrawal liability determinations, and by failing to move for a stay of Truckmen's counterclaim. In rejecting this argument, Arbitrator Schwartz reasoned that the MPPAA imposed no burden on a pension plan to seek a stay or to inform an employer that arbitration is the exclusive forum. Moreover, the Arbitrator continued, by commencing court proceedings the Fund was merely fulfilling its fiduciary obligation to ensure the collection of the withdrawal lia-

bility monies it claimed was owing and thus its initiation of proceedings in this Court did not constitute equitable estoppel.

In its final procedural argument, Truckmen contended that "equitable principles" entitled it to arbitration even though a timely demand had not been made. Before addressing this issue, however, the Arbitrator proceeded to the merits and determined that Truckmen was entitled to the sale of assets exemption. The Arbitrator then returned to the equity argument and, after determining that he possessed authority to render a decision on the "equities in the case," reasoned, first, that equitable principles militated in favor of forgiving Truckmen's default *because* Truckmen was entitled to the exemption. The Arbitrator also reasoned that, notwithstanding the unambiguous wording of the statute and the importance of the arbitration time limit, Truckmen subjectively believed that the Court and not arbitration was the proper forum, and equity should intervene to excuse what he deemed Truckmen's non-negligent mistake of law. *Id.* at 1387. Finally, the Arbitrator reasoned that his invocation of inherent equitable power to excuse Truckmen's tardiness was supported by the statute and the legislative history, and would not set a bad precedent. *Id.*

In sum, the Arbitrator rejected Truckmen's three traditional arguments for excusing a party's compliance with a statutory limitation (waiver, equitable estoppel, and tolling), but accepted Truckmen's argument based on "equitable considerations."

■ The Fund argues that the Arbitrator acted in manifest disregard of the law in invoking those equitable powers. Fitting its argument into the wording of the test commonly employed by the courts in weighing such a claim, the Fund argues

that the Arbitrator appreciated the existence of a clearly governing legal principle (the time limitation for requesting arbitration) but decided to ignore it. This Court agrees.

The MPPAA provides that "[a]n arbitration proceeding under [section 1401 of Title 29] shall be conducted in accordance with fair and equitable procedures to be promulgated by the [Pension Benefit Guarantee] corporation." 29 U.S.C. § 1401(a)(2). In carrying out its duty to promulgate fair and equitable procedures, PBGC enacted, after public comment, a regulation, 29 C.F.R. § 2641 (1988) (effective Sept. 26, 1985),[5] governing arbitration of withdrawal liability disputes. In that regulation, PBGC delineated the powers of an MPPAA Arbitrator:

(a) **Arbitration hearing.** Except as otherwise provided in this part, the arbitrator shall conduct the arbitration hearing under § 2641.5 in the same manner, and shall possess the same powers, as an arbitrator conducting a proceeding under Title 9 of the United States Code.

(1) **Application of the Law.** In reaching his decision, the arbitrator shall follow applicable law, as embodied in statutes, regulations, court decisions, interpretations of the agencies charged with the enforcement of the Act, and other pertinent authorities.

29 C.F.R. § 2641.4 (1988). As explained by the PBGC upon publishing the rule as final:

The proposed regulation required the arbitrator to be "guided by interpretations given the Act by the courts and agencies charged with enforcement of the Act." This statement elicited various comments, ranging from a request that the arbitrator be precluded from considering legal issues to the suggestion that he

---

5. Although the arbitration officially commenced on January 29, 1985, and this regulation did not become effective until September 26, 1985, it appears that the regulation governed the arbitration in the case at bar, at least with respect to the Arbitrator's powers in deciding the case and publication of the award. This is so because the arbitration hearings did not close until October 2, 1985, and the PBGC stated simply when enacting the regulation that it became effective *on* September 26, 1985, *not* that it became effective

only in arbitrations commenced after September 26, 1985.

Moreover, Truckmen does not challenge the applicability of the regulation with respect to the Arbitrator's decision. Indeed, Truckmen cites the legislative history of the regulation in support of its argument that "fair and equitable" considerations govern MPPAA arbitrations. Defendant's Reply Memorandum of Law, at 69 (citing 50 Fed.Reg. 34, 679 (1985)).

interpret the Act "as if he were a United States district judge." Other comments urged the inclusion of additional possible sources of law, such as legislative history.

The arbitrator of a withdrawal liability dispute can scarcely avoid some application of the law in rendering his award. *As the final regulation attempts to make clear, he is to follow existing law, as discerned from pertinent authorities. He is not free to disregard settled legal principles in pursuit of an individual perception of justice or equity.* The final regulation does not, however, try to tell the arbitrator precisely where settled law is to be found.

50 Fed.Reg. 34681 (August 27, 1985) (emphasis added). As the regulation and its legislative history make clear, Arbitrator Schwartz was bound to follow "existing law" and was not free "to disregard *settled* legal principles in pursuit of an individual perception of justice or equity." The questions, then, are whether "existing" or "settled" law included the invocation of inherent equitable power to excuse Truckmen's default where arguments based on waiver, estoppel and tolling have been rejected, and, if the Arbitrator acted contrary to settled law, whether that is tantamount to a manifest disregard of the law.

To be sure, as Truckmen correctly points out, Congress has stated that MPPAA controversies should be decided "in accordance with fair and equitable procedures...." *See* 29 U.S.C. § 1401(a)(2). In addition, it is well established that arbitrators are empowered to decide whether certain equitable defenses are applicable in a given controversy. *See, e.g., Trafalgar Shipping Co. v. International Milling Co., supra,* 401 F.2d at 572 (laches). Indeed, the Supreme Court has recognized that the equitable principle of tolling applies to all federal statutes of limitation. *See Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1945); *See also American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 559, 94 S.Ct. 756, 769, 38 L.Ed.2d 713 (1973); *Burnett v. New York Central R. Co.,* 380 U.S. 424, 427–28, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 231–34, 79 S.Ct. 760, 761–62, 3 L.Ed.2d 770 (1959); *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 347–48, 22 L.Ed. 636 (1875). Moreover, courts have recognized that equitable tolling applies where a party in an MPPAA case mounts a constitutional attack on the statute and fails to make a timely arbitration request. *Republic Industries, Inc. v. Teamsters Council 83 Pension Fund,* 718 F.2d 628, 644 (4th Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). It does not follow, however, that an arbitrator possesses unfettered, equitable power to excuse a federally prescribed limitations period in a federal statute where the equitable arguments based on waiver, estoppel, and tolling have already been rejected. To the contrary, all the authority suggests that such an approach is unsupportable.

First, Truckmen has cited no case—and the Court's research has revealed none—where a court or an arbitrator has invoked equity, in a case not involving waiver, tolling, or estoppel, to excuse compliance with a federally prescribed limitation period. *Cf.* 2 J. Pomeroy, *Equity Jurisprudence* § 419c, at 175 (5th ed. 1941) ("an action not brought within the statutory period is barred, unless the case falls within some exception which the statute itself makes, or the defendant is estopped to plead, or has waived, the bar"). Second, the Supreme Court has cautioned that the doctrine of equitable estoppel can excuse a limitations period in a federal statute *only* in those circumstances not inconsistent with the legislative purpose. *See American Pipe & Construction Co. v. Utah, supra,* 414 U.S. at 559, 94 S.Ct. at 769; *Burnett v. New York Central, supra,* 380 U.S. at 427, 85 S.Ct. at 1054. In the case at bar, the legislative history of the MPPAA amply demonstrates that Congress wanted withdrawal liability controversies to proceed to arbitration in an expeditious manner. Congress stated flatly that it wanted to curtail the dilatory court proceedings often initiated by employers in such disputes. Yet that is precisely what Truckmen initiated here: instead of making a timely demand for arbitration, it counterclaimed, moved for summary judgment in a case where arbitration was mandated and where facts

were clearly disputed, and it caused the parties to engage in expensive and time-consuming discovery. Thus, its activities were inimical to, not consistent with, the legislative purpose. Finally, venerable Supreme Court authority proscribes the intervention of equity where, as the Arbitrator found in the instant case, a party has made a mistake of law. *See, e.g., Utermehle v. Norment,* 197 U.S. 40, 57, 25 S.Ct. 291, 296, 49 L.Ed. 655 (1904); *United States v. Ames,* 99 U.S. 35, 46, 25 L.Ed. 295 (1878); *Hunt v. Rousmaniere,* 26 U.S. (1 Pet) 1, 9, 7 L.Ed. 27 (1828). As the Court noted in *Utermehle:*

> It has been held from the earliest days, in both the Federal and State courts, that a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation, constitutes no basis for relief at law or in equity, and forms no excuse in favor of the party asserting that he made such mistake.

197 U.S. at 56, 25 S.Ct. at 296. Thus, it is clear that the Arbitrator's invocation of equity in this case in order to forgive Truckmen's untimely request for arbitration was wholly unprecedented and contrary to settled law.

CONCLUSION

For the reasons set forth above, the Fund's motion to vacate is granted, Truckmen's motion is denied in its entirety, and the Award of the Arbitrator, *Mangan and Owens Truckmen, Inc.,* 7 EBC 1353, is vacated.

Accordingly, because Truckmen's arbitration request was untimely, the sum of $177,403.00 (the amount demanded by the Fund as Truckmen's withdrawal liability) shall be due and payable in accordance with the installment payment schedule set forth by the Fund in its demand letter dated July 26, 1982.

The Clerk of the Court is directed to enter judgment consistent with this opinion.

SO ORDERED.