**SIGMUND COHN CORPORATION,**
**Plaintiff,**

**v.**

**DISTRICT NO. 15 MACHINISTS PENSION FUND, BY ITS BOARD OF TRUSTEES, I. Michael Braco, Richard Hubert, Victor San Filippo, William Henry and Alan I. Stern, Defendants.**

**No. CV 91–2691 (RJD).**

United States District Court,
E.D. New York.

Oct. 22, 1992.

Barry N. Saltzman, Shea & Gould, New York City, for plaintiff.

Joyce Tichy, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

In this action to confirm an arbitrator's decision concerning an employer's liability upon withdrawal from a multiemployer pension plan, the Court must consider the assessment of liability under section 4221 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1401. The employer, petitioner Sigmund Cohn Corporation ("Sigmund Cohn"), had challenged its assessment of withdrawal liability imposed by the respondent Board of Trustees (the "Trustees") of respondent District No. 15 Machinists Pension Fund (the "Fund") through ERISA's dispute resolution procedures. The arbitrator ruled the assessment "clearly erroneous" and thus unenforceable and directed the Fund to recalculate the employer's liability.

Sigmund Cohn seeks to confirm this award under ERISA § 4221, 29 U.S.C. § 1401, and requests costs, including reasonable attorney's fees, under ERISA section 4301(e), 29 U.S.C. § 1451(e).

For the reasons discussed below, the Court concludes that the assessment was clearly erroneous and accordingly confirms the arbitrator's award in all respects. The Court denies Sigmund Cohn's application for costs and attorney's fees.

### Background

The following facts are essentially undisputed. From 1962 until March 31, 1989, Sigmund Cohn was a contributing employer to the Fund, a multiemployer pension plan subject to the provisions of ERISA and the MPPAA.[1] The documents establishing the Fund, an agreement and declaration of trust (the "Trust Agreement") and a corresponding plan (the "Plan"), provide that they may be amended only "by an instrument in writing executed by the Trustees," Exh. C at 30 (Trust Agreement, Article XIV),[2] and "in accordance with the Agreement and Declaration of Trust establishing the pension Fund." Exh. C at 159 (Plan, Article IX). Notwithstanding these terms, the Trustees have operated the Fund in accordance with amendments written in 1980 but never executed by the Trustees, and in accordance with amendments formally executed after their effective dates, including an amendment effective July 1, 1972 only later executed on January 22, 1973 and one effective January 1, 1976 executed on July 21, 1978.[3]

1. Sigmund Cohn contributed to the Fund on behalf of employees covered by successive collective bargaining agreements with District 15.

2. The Record of the Proceedings before the Arbitrator is annexed to the Petition as Exhibit C will be referred to as "Exh. C at ___."

3. The Trustees point to a provision in the Trust Agreement to explain this informality; it states that the documents' form

shall not give rise to literal or formal interpretation or construction; such interpretation or construction shall be placed on this Agreement and Declaration of Trust as will assist in the functioning of the Plan for the benefits of

In 1980, the Trustees purported to amend the Plan by "adopting"[4] a hybrid method for calculating withdrawal liability which used the greater of the presumptive or direct methods. In late 1985, the Pension Benefit Guaranty Corporation (the "PBGC") published regulations that invalidated this "greater of" method. The Trustees recognized, as demonstrated in the minutes of their meetings held December 9, 1985 and March 28, 1986, that as a result of the PBGC invalidation, the statutory presumptive method would apply. *See* Exh. C at 64–66 and 161–78. The Trustees therefore resolved—without formally amending the Plan or Trust Agreement— "to adopt the presumptive method for all employers which withdraw on or after January 1, 1986." *Id.* at 66. Within weeks of the PBGC decision, the Trustees settled a class action suit brought by withdrawing employers, stipulating that

> [a]s to all employers withdrawing from [the Fund] on or after January 1, 1986, the [Fund] shall compute and assess withdrawal liability under said "presumptive method."

*See* Exh. C at 167 (Stipulation of Settlement, dated January 22, 1986).

By late 1988, the Fund had $61 million in unfunded vested benefits to participants. In an effort to limit further unfunded liability, the Trustees, at a meeting on January 30, 1989, agreed to adopt the alternative "attributable" or "direct attribution" method for withdrawals occurring on or after March 1, 1989. The documents implementing this resolution were not prepared and executed until well after that effective date; the Trustees only signed the amendment of Article XII of the Plan on May 22, 1989 and the amendment of Article XV of the Trust Agreement on June 5, 1989. The minutes of the January 30th meeting were themselves never signed.

In the course of negotiating a successor agreement with District 15, Sigmund Cohn received from the Fund Director a ·letter, dated February 2, 1989, that advised contributing employers:

> participant and beneficiaries regardless of form.
> Exh. C at 30 (Trust Agreement, Article XIII).

The Trustees have amended the District No. 15 Machinists Pension Fund ·Agreement and Pension Plan, effective March. 1, 1989, to allocate Withdrawal Liability to employers who withdraw on or after that date pursuant to the "direct attribution method" set forth in [ERISA] at section 4211(c)(4) using the fraction described at ERISA section 4211(c)(4)(D)(i) and the modification permitted by [PBGC] Regulation section 2642.7.

Exh. C at 68. Sigmund Cohn, concerned that this new method would adversely affect its withdrawal liability—and thus its negotiations with the union—promptly sought from the Fund "an updated computation of the withdrawal liability costs under the Multiemployer Pension Plan Amendments Act (calculated in accordance with the amendments to the plan that will be in effect as of March 1, 1989) that would be incurred by Sigmund Cohn if it were to withdraw from the pension plan." Exh. C at 210 (Letter from Richard Bemporad to the Fund, February 10, 1989).

On February 28, 1989, the Fund Actuary sent the Director a report containing calculations of the employer's liability, with a cover letter stating:

> The figures contained in this report reflect the data supplied to us by the Fund Office, the actuarial assumptions and methods noted, and the withdrawal calculation adopted by the Trustees and approved by the [PBGC]. They are based on withdrawal during 1988.
>
> This employer has a withdrawal liability of $674,706.

Exh. C at 211 (Letter from Neil Savasta to Trustees, February 28, 1989).

A week later, the Fund Director forwarded the report, without its covering letter, to Sigmund Cohn, assessing its estimated withdrawal liability as $674,706. Exh. C at 212. Although the report indicates use of the presumptive method and makes no reference to the attributable method that the Trustees had voted to adopt effective

---

**4.** As noted above, the documents providing for the Plan's amendment were never executed by the Trustees. *See* Exh. C at 32–63.

March 1, 1989—under which Sigmund Cohn had expressly requested the estimated calculation—the Director's letter advised that the report was sent "in response" to Sigmund Cohn's request. On March 1, 1989, Sigmund Cohn withdrew as a contributing employer. Nearly nine months later, on December 22, 1989, the Fund advised the employer that its withdrawal liability amounted to $1,751,733, using the direct attribution method.

Sigmund Cohn timely challenged the Fund's assessment and the parties proceeded to arbitration, conducted by John E. Sands, Esq. Three issues were strongly contested: whether the Fund's calculation of Sigmund Cohn's withdrawal liability was entitled to the statutory presumption of correctness; whether the Trustees effectively amended the Plan and Trust Agreement as of March 1, 1989; and whether the arbitrator could apply equitable estoppel to vary the MPPAA's scheme for assessing withdrawal liability.

After presiding over a day-long hearing of testimony and argument, and after considering the parties' stipulated facts and extensive written submissions, Arbitrator Sands rendered a sixteen-page decision, finding in Sigmund Cohn's favor on the first two issues.[5] He found that the Fund had not amended its Plan and Trust Agreement until May 22 and June 5, 1989, respectively, and concluded that "the Fund lacked authority under the terms of its own documents to use any but the statutory presumptive method in calculating [Sigmund] Cohn's liability for withdrawal from the Fund on March 1, 1989." Exh. E at 11 (Opinion and Award of Arbitrator Sands, June 21, 1991). Its assessment, therefore, was "clearly erroneous." *Id.* Arbitrator Sands directed the Fund to recompute Sigmund Cohn's withdrawal liability using the statutory presumptive method, and stop all efforts to enforce its claim.

Sigmund Cohn seeks confirmation of this award under ERISA section 4221, 29 U.S.C. § 1401, and attorney's fees under section 4301(e), 29 U.S.C. § 1451(e).

### Discussion

#### A. Standard of Review

Section 4221 of ERISA, as amended by the MPPAA, governs this Court's review of Arbitrator Sands' decision. Subsection (b) provides for judicial review of an action to "enforce, vacate or modify the arbitrator's award." ERISA § 4221(b), 29 U.S.C. § 1401(b). "[T]here shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." ERISA § 4221(c), 29 U.S.C. § 1401(c) (1988). Courts reviewing arbitration awards have consistently upheld the arbitrator's factual findings under section 4221(c)'s "presumption of correctness." *See, e.g., Chicago Truck Drivers Pension Fund v. Louis Zahn Drug Co.*, 890 F.2d 1405, 1406 (7th Cir.1989).

As the parties agree, however, the statute does not prescribe the standard of review for an arbitrator's conclusions of law. *See Huber v. Casablanca Indus., Inc.*, 916 F.2d 85, 89 (3d Cir.1990). In the absence of an express statutory provision, some courts have themselves determined the appropriate standard of review; the Second Circuit has yet to address the issue.

The Fund relies on decisions by several other courts of appeal to argue for *de novo* review of the arbitrator's legal determinations. *See Huber*, 916 at 89; *Parmac, Inc. v. I.A.M. Nat'l Pension Fund Benefit Plan A*, 872 F.2d 1069, 1071 (Fed.Cir.1989); *Trustees of Iron Workers Local 473 v. Allied Prods.*, 872 F.2d 208, 211 (7th Cir.), *cert. denied*, 493 U.S. 847, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989); *Union Asphalts and Roadoils, Inc. v. MO–KAN Teamsters Pension Fund*, 857 F.2d 1230, 1233–34 (8th Cir.1988), *cert. denied*, 490 U.S. 1022, 109 S.Ct. 1748, 104 L.Ed.2d 185 (1989); *Trustees of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 928–29 (9th Cir.), *cert. denied*, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986); *I.A.M. Nat'l Pen-*

---

**5.** The Arbitrator expressly declined to address the third issue of estoppel as outside his statuto-ry authority.

**494**

*sion Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1207 n. 7 (D.C.Cir. 1984).[6]

Sigmund Cohn, in advocating a more deferential standard, argues that since the MPPAA expressly provides that withdrawal liability arbitrations shall be conducted and enforced in the same manner as those "carried out under title 9," *see* ERISA § 4221(b)(3), 29 U.S.C. § 1401(b)(3), the judicially developed standard usually applied under title 9, that of "manifest disregard of the law," should apply in this instance. *See Mangan v. Owens Truckmen, Inc.* 715 F.Supp. 436, 444 (E.D.N.Y.1989) (applying title 9 "manifest disregard" standard to vacate arbitration award of withdrawal liability under ERISA). It offers, however, no relevant Second Circuit authority to support its argument.

The Court need not determine the appropriate standard since even a *de novo* review shows that the Arbitrator's award must be confirmed. His findings establish that the Fund imposed a calculation method on Sigmund Cohn's withdrawal that was only later adopted—in contravention to the Plan's and ERISA's express provisions.

### B. Plan Amendment Process

ERISA requires an employer withdrawing from a multiemployer pension plan to pay for its allocable share of the plan's unfunded vested benefits. *See* ERISA § 4201, 29 U.S.C. § 1381; *Park South Hotel Corp. v. New York Hotel Trades Council,* 851 F.2d 578 (2d Cir.), *cert. denied,* 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). Section 4211(c) provides that the plan may be amended to incorporate one of four alternative methods specified in the statute, *see* ERISA § 4211(c)(2), (3) or (4), 29 U.S.C. § 1391(c)(2), (3) or (4), or any other method receiving the PBGC's approval. *See* ERISA § 4211(c)(5), 29 U.S.C. § 1391(c)(5). If, however, the plan is silent as to the method of calculation, the plan must use the "presumptive method" found in ERISA section 4211(b), 29 U.S.C. § 1391(b).

Section 4221(a)(3)(A) provides that any determination by a plan's sponsor is "presumed correct unless the party contesting the determination demonstrates by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A). Arbitrator Sands invalidated the Fund's assessment of Sigmund Cohn's withdrawal liability because it had erroneously applied the attributable method prior the Plan's effective amendment, in contravention of the Plan and Trust Agreement's express terms.

The Fund attacks the Arbitrator's decision on the ground that he failed to give proper deference to the Fund's determination of liability in accordance with the attributable method. The Fund additionally claims that its interpretation of the Plan—permitting retroactive use of the attributable method—is itself entitled to deference. It argues that Article XIII's provision eschewing "literal or formal interpretation" overrides the "technical" requirements of Article XIV regarding the amendment process.

Although a fund's interpretation of its own pension agreement deserves some deference, such construction must abide by the plain meaning of the plan's terms. *See Pilon v. Retirement Plan for Salaried Employees of Great Northern Nekoosa Corp.,* 861 F.2d 217, 218 (9th Cir.1988). An application of the plan's provisions that conflicts with its unambiguous meaning must be considered unreasonable and not entitled to any deference. Moreover, such interpretation cannot fly in the face of the statute's express provisions.

ERISA section 402 requires that each plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). By explicitly requiring a plan to specify its amendment procedure, Congress rejected the use of informal written documents. *See Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986). Where a plan has complied

---

**6.** The Seventh Circuit has suggested that Congress "intend[ed] all legal determinations by an arbitrator to be subject to *de novo* review." *Chicago Truck Drivers,* 890 F.2d at 1409.

with section 402 by establishing a method for accomplishing amendment, each putative amendment must be evaluated by reference to that procedure. *Frank v. Colt Indus.*, 910 F.2d 90, 98 (3d Cir.1990).

Here, the Trust Agreement establishing the Fund and defining the Trustees' powers could not be more clear: the procedure to amend the Trust may be accomplished only "by an instrument in writing *executed by the Trustees.*" By the provision's plain meaning, no amendment occurs until the Trustees have executed the required written instrument. Arbitrator Sands found that the January 30th meeting did not amount to an amendment of the Plan's documents to include the attributable method of calculation; rather, it was "a resolution or statement of intention that required amendment of the Plan and Trust Agreement according to the Agreement's terms to become effective." Exh. E at 11. This conclusion is bolstered by ERISA's statutory prohibition of retroactive application, in the absence of the employers' consent, of plan amendments adopting alternative withdrawal liability calculation methods. *See* ERISA § 4214(a), 29 U.S.C. §. 1394(a).

The Fund cites the Third Circuit's decision in *Huber, supra,* to reduce the express requirement of Article XIV to a "mere technicality" unnecessary to effect an amendment of the Plan. To be sure, the Arbitrator in *Huber* found it sufficient that the modifications "had been adopted pursuant to resolutions of the Board of Trustees and written in the minutes of the meetings." 916 F.2d at 105. However, he explicitly noted that the plan "granted the Trustees broad powers to amend the plan *without limitations on the particular format of such actions.*" *Id.* (emphasis added). In contrast, the provision in Article XIV of the Trust Agreement grants the Trustees power to amend the Plan or Trust Agreement only by a written instrument which they have executed. They cannot, except in accordance with Article XIV, vary the clear and unambiguous terms of the

provision establishing their power to act in the first place.

The Court is unpersuaded by the Fund's argument that the practical realities of administering "such complex legal documents as a pension trust agreement and plan document" required the Arbitrator to ignore the clear import of Article XIV. The Trustees could have satisfied the provision simply by executing the "written instrument" of the minutes of the January 30th meeting. In the alternative, they could have exercised their authority and amended the amendment process itself to allow modification by resolution at a Board meeting. Their past practice of operating in accordance with amendments that failed to satisfy Article XIV's terms cannot justify this Court's failure to abide by the document's express provisions.

The Court, in agreement with the Arbitrator, concludes that the Fund had not effectively amended the Plan and Trust Agreement to adopt the attributable method as of March 31, 1989; its assessment of Sigmund Cohn's withdrawal liability is therefore clearly erroneous and must be recalculated under the "statutory presumption" method.

### C. Attorney's Fees

Sigmund Cohn seeks, as a prevailing party, the award of attorney's fees and other expenses under the fee-shifting provisions of the MPPAA and ERISA section 4301(e), 29 U.S.C. § 1451(e).[7] Although the fee-shifting provisions are available in withdrawal liability actions, when the prevailing party is the employer, "courts exercise cautiously the discretionary power to award fees." *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund,* 902 F.2d 185, 187 (2d Cir.1990); *see, e.g., Cuyamaca Meats, Inc. v. San Diego and Imperial Counties Butchers' and Food Employers' Pension Trust Fund,* 827 F.2d 491, 500 (9th Cir.1987), *cert. denied,* 485 U.S. 1008,

---

7. Section 4301(e) provides, in pertinent part, that a

    court may award all or a portion of the costs and expenses incurred in connection with

    such action, including reasonable attorneys' fees, to the prevailing party.

    29 U.S.C. § 1451(e).

**496**

108 S.Ct. 1474, 99 L.Ed.2d 703 (1988); *Central States, Southeast and Southwest Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 767 (6th Cir.1987); *Dorn's Transp., Inc. v. Teamsters Pension Trust Fund*, 799 F.2d 45, 49–50 (3d Cir.1986).

The Second Circuit has adopted the five-part conjunctive test first articulated in *Miles v. New York State Teamsters Conference Pension and Retirement Fund*, 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). *See Anita Foundations*, 902 F.2d at 187–89. To assess the reasonableness of awarding attorney's fees under ERISA and the MPPAA, a court must consider:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action sought to confer a common benefit of a group of pension plan participants.

*Id.* at 188 (citations omitted). As the *Anita Foundations* court recognized, the five factors will often balance against a prevailing employer. *Id.* at 189. Such is the circumstance in this case.

While the Fund has ultimately proved unsuccessful in this litigation, nothing in the record indicates that it exhibited bad faith or culpability. In fact, Arbitrator Sands found that the Fund pursued the matter "in good faith" to comport with the Trustees' fiduciary duty to protect the Fund's assets. *See* Exh. E at 15. The Fund had assessed the employer's withdrawal liability consistent with a longstanding, albeit erroneous, operating principle concerning the effective date of Plan amendments followed in the past without objection from the participating employers. Its interpretation of the Plan's provisions, in light of the generally broad "presumption of correctness" afforded by ERISA section 4221(e), is neither strained nor untenable. Because the Fund advanced colorable legal arguments in what is an uncertain area of law, the Court declines to grant Sigmund Cohn's fee request.

### Conclusion

For the reasons discussed above, the arbitration award in petitioner's favor is confirmed. Petitioner's application for costs and attorney's fees is denied.

SO ORDERED.