INTERNATIONAL UNION OF BRICK-LAYERS AND ALLIED CRAFTSMEN, International Union of Bricklayers and Allied Craftsmen Local No. 5, Emil A. Parietti, Jr., Richard O'Beirne, George Frank, John Parietti, Manuel Valente and Philip Mosca, as Trustees of the Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds, Plaintiffs,

v.

Andrew GALLANTE, Sr., Michael Cavallaro, Salvatore Mauro and Roderick Cifferi, III, Individually and as Fiduciaries of the Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds and Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds, Defendants.

No. 94 Civ. 3061 (WCC).

United States District Court, S.D. New York.

Jan. 30, 1996.

---

Rider, Weiner, Frankel & Calhelha, P.C. (Moacyr R. Calhelha, of counsel), Newburgh, New York, for Plaintiffs.

Gellert & Cutler, P.C. (Stephen E. Ehlers, of counsel), Poughkeepsie, New York, for Defendants.

WILLIAM C. CONNER, Senior District Judge:

This action arises out of the turmoil that has troubled the administration of the Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds ("HVDC Funds"). Plaintiffs have moved for summary judgment on eight of their twelve claims for relief. Defendants have moved for summary judgment on one of their ten counterclaims. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part, and defendants' motion is denied.

## BACKGROUND

The pertinent factual background of this action is complex and must be described at some length. The facts set forth here are undisputed, unless otherwise indicated.

On April 30, 1990, the International Union of Bricklayers and Allied Craftsmen ("Inter-

national Union") created the Hudson Valley District Council ("HVDC") to serve as an umbrella organization coordinating the activities of Locals 22, 27, 44, 48 and 55, which were employee organizations with jurisdiction in Orange, Sullivan, Ulster, Dutchess, Putnam and Westchester counties. Subsequently, the HVDC negotiated and signed collective bargaining agreements covering Locals 22, 27, 44, 48 and 55. In a series of mergers concluded on January 1, 1991, the employee benefit funds of Locals 22, 27, 44, 48 and 55 were merged to form the HVDC Funds.[1]

The HVDC Funds are multi-employer, labor-management trust funds subject to regulation under the Labor Management Relations Act and the Employee Retirement Income Security Act ("ERISA"). The HVDC Funds are governed by the trust agreements, as restated and amended, that established the employee benefit funds of the now-defunct Local 44.[2] Those trust agreements provide for a four-member Board of Trustees, composed of two trustees appointed by the union and two trustees elected by the employers. See Exhibits 8, at 8; Exhibit 17, at 8; Exhibit 21, at 8; Exhibit 26, at 7 (all attached to Gallante Aff.). The parties agree that the documents effecting the fund mergers do not address the post-merger composition of the Board of Trustees of the HVDC Funds. See, e.g., Exhibit K, attached to Plaintiffs' Rule 3(g) Statement, dated Sept. 22, 1995. As of early February 1991, the union-designated trustees of the HVDC Funds were defendant Andrew T. Gallante, Sr. ("Gallante Sr.") and defendant Michael Cavallaro, while the employer-designated trustees

were defendant Roderick W. Ciferri, III, and defendant R. Salvatore Mauro.

The minutes of the February 13, 1991, meeting of the HVDC Funds' Board of Trustees indicate that two new employer-designated trustees were to serve on the Board: plaintiff George A. Frank and plaintiff Richard O'Beirne. See Exhibit D, attached to Plaintiff's Sept. 22 Rule 3(g) Statement. The minutes of the May 28, 1991, trustees' meeting reflect that Aldo Zavattoni and Andrew T. Gallante, Jr. ("Gallante Jr.") would be serving as union-designated trustees. See Exhibit E, attached to Plaintiff's Sept. 22 Rule 3(g) Statement. For over two years, these four individuals acted as trustees without objection from anyone.

In 1993, Gallante Sr. decided to retire from his position as trustee of the HVDC Funds. From 1968 to 1993, Gallante Sr. was the full-time business manager of Local 44 and then of the HVDC, as well as a trustee of the Local 44 Funds and then of the HVDC Funds. Gallante Sr. had therefore been deeply involved in the day-to-day administration of the HVDC Funds. On June 29, 1993, the Board of Trustees approved a contract under which the HVDC Funds would pay Gallante Sr. a salary of $1,080.00/week plus expenses from July 1, 1993, to December 31, 1996. In return, Gallante Sr. would provide consulting services on an as-needed basis. See Exhibit C, attached to Plaintiffs' Sept. 22 Rule 3(g) Statement. Gallante Sr. resigned from the Board of Trustees on June 30, 1993.

On August 5, 1993, Local 29, with jurisdiction in Rockland County, became a member of the HVDC. Local 29's separate collective bargaining agreements continued in effect, however. As of August 5, 1993, several mul-

---

1. The HVDC Funds consist of the Welfare Fund, the Retirement Fund, the Apprentice Training and Journeymen Upgrading Fund and the Labor Management Coalition and Resource Recovery Plan. See Exhibits 8, 17, 21, 26, attached to Affidavit of Andrew T. Gallante, Sr., dated Oct. 16, 1995 ("Gallante Aff.").

2. Defendants have submitted copies of these trust agreements to the court and have represented that these documents are the applicable trust agreements. See Exhibits 8, 17, 21, 26, attached to Gallante Aff. Plaintiffs contend, in one brief paragraph of their reply memorandum, that defendants' reliance on the trust agreements is mis-

placed because defendants have not provided any documents that explicitly state that the Local 44 trust agreements would be applicable following the mergers. See Plaintiffs' Reply Memorandum, at 5–6.

Plaintiffs have provided no support for their contention. Furthermore, the trust agreements themselves back up defendants' representation: in 1990, the trust agreements were duly amended, and the Local 44 Funds were renamed the HVDC Funds. See Exhibits 9, 19, 24, 27, attached to Gallante Aff. No genuine question of fact exists on this point.

ti-employer, labor-management employee benefit funds were affiliated with Local 29 ("Local 29 Funds"). The trustees of the Local 29 Funds and the HVDC Funds envisioned that a merger of the two sets of funds would take place shortly after Local 29 joined the HVDC. That merger has not yet occurred; plaintiffs and defendants each assert that the others are responsible for the delay.

On September 20, 1993, Emil A. Parietti, Jr., formerly an officer of Local 29 and a trustee of the Local 29 Funds, was elected Secretary–Treasurer of the HVDC to replace Gallante Sr.

On September 21, 1993, which was more than two years after the purported appointment of O'Beirne, Frank, Zavattoni and Gallante Jr., the minutes of the Board of Trustees' meeting indicate that the Board discussed amending the HVDC Funds' trust agreements to increase the number of trustees to eight. The HVDC Funds' counsel was directed to prepare a draft amendment for consideration by the Board. *See* Exhibits F, G, attached to Plaintiffs' Sept. 22 Rule 3(g) Statement.

On January 7, 1994, Parietti attempted to use his authority as Secretary–Treasurer of the HVDC to appoint himself as a union-designated trustee in place of Cavallaro. Certain defendants disputed the legality of Parietti's action.

The minutes of the January 11, 1994, meeting of the Board of Trustees report that the proposed amendment to expand the Board of Trustees was tabled. *See* Exhibit 32, attached to Gallante Aff. The Board never executed a formal amendment to the trust agreements. On March 16, 1994, counsel for the HVDC Funds sent a letter to the eight men who had been acting as trustees informing them that because no formal action had ever been taken to expand the Board, Zavattoni, Frank, O'Beirne and Gallante Jr. were

not trustees. *See* Exhibit J, attached to Plaintiffs' Sept. 22 Rule 3(g) Statement.

On March 31, 1994, the Executive Board of the International Union issued an order dissolving the HVDC and revoking the charters of Locals 22, 27, 29, 44, 48 and 55. In its place, the International Union created Local 5, whose territory encompassed the various jurisdictions of the dissolved locals. The International Union appointed Parietti to serve as President of Local 5. The International Union granted Parietti "the authority to make all necessary appointments ... including the appointment of trustees to all trust funds in which members of Local 5 participate." *See* Exhibit A, attached to Affidavit of Emil A. Parietti, Jr., dated April 18, 1995. The parties agree that Local 5 is the successor to the HVDC. Collective bargaining agreements signed by the HVDC continued in force after the creation of Local 5. As those agreements expire, they are replaced by agreements between employers and Local 5.[3]

Pursuant to the collective bargaining agreements signed by various employers and the HVDC, the HVDC Joint Benefit Administration Fund Account was designated as the collection agent for dues check-off payments deducted by employers from the paychecks of members of Locals 22, 27, 44, 48 and 55. Local 29's collective bargaining agreements contained a similar provision. Local 5 is the successor to those arrangements. Plaintiffs allege that since April 1994, the HVDC Funds have withheld dues check-off monies from Local 5. Although the HVDC Funds have apparently paid $141,136.73 directly to the International Union, plaintiffs allege that they are owed approximately $123,000 in additional dues check-off payments for 1994, as well as all dues check-off payments for 1995.

The applicable collective bargaining agreements require that the local unions contribute to the appropriate employee benefit funds on behalf of their full-time employees.

**3.** Separate collective bargaining agreements between employers and Local 29 also continued in force and expired on April 30, 1995. On April 27, 1995, although Local 29 was defunct, those separate agreements were extended until May 31, 1996. The addendum that provides for the extension also states that the Local 29 agreements are to be incorporated into the Local 5 agreements. *See* Exhibit B, attached to Affidavit of Emil A. Parietti, Jr., dated May 25, 1995. The reasons for this arrangement were not explained in the motion papers.

Until March 31, 1994, Emil A. Parietti, Jr., and John Parietti were full-time employees of Local 29 and participants in the Local 29 Funds. Following the dissolution of Local 29, the Pariettis became full-time employees of Local 5. Local 5 has made its benefit contributions for them to the Local 29 Funds. Defendants contend that Local 5 should have made benefit contributions, totalling approximately $106,000 as of April 1995, to the HVDC Funds instead.

On April 26, 1994, plaintiffs Local 5, Philip Mosca[4] and Emil Parietti filed suit against the HVDC Funds, Cavallaro, Mauro, Ciferri and Gallante Sr. The pleadings have been amended twice to assert additional claims and to add plaintiffs O'Beirne, Frank, John Parietti, Manuel Valente,[5] and the International Union. Plaintiffs have asserted twelve claims. Those claims for which they currently seek summary judgment may be sorted into three groups: claims relating to the composition of the Board of Trustees of the HVDC Funds, claims concerning Gallante Sr.'s consulting contract and claims relating to the dues check-off payments. Defendants seek summary judgment on their counterclaim against Local 5 for recovery of the allegedly delinquent benefit contributions for the Pariettis.

## DISCUSSION

■ Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has explained that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.,* at 248–49, 106 S.Ct. at 2510–11.

■ Moving for summary judgment entails some risk for the moving party:

A motion for summary judgment searches the record, and it is well settled that if such a search reveals that there are no genuine issues of material fact, but that the law is on the side of the *non-moving* party, then "summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56."

*Montgomery v. Scott,* 802 F.Supp. 930, 935 (W.D.N.Y.1992) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 29–30 (2d ed. 1983)). The Second Circuit has recently held that a district court need not give notice of its intention to enter summary judgment against the moving party, so long as the facts before the court are fully developed and the moving party suffers no procedural prejudice. *See Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991). The threat of procedural prejudice is greatly diminished if the court's determination is based on issues identical to those raised by the moving party. *See id.*

### A. Composition of the Board of Trustees

With these principles in mind, we turn to plaintiffs' motion for summary judgment on their claims regarding the composition of the Board of Trustees of the HVDC Funds. Plaintiffs' fourth claim seeks a declaratory judgment that the Board of Trustees is composed of eight members, including O'Beirne, Frank, Valente and John Parietti ("purported trustees"). Plaintiffs' fifth claim seeks a permanent injunction compelling defendants to accept those individuals as trustees. Plaintiffs' sixth claim seeks, in pertinent part, a judgment that defendants have breached their fiduciary duties by refusing to recognize the purported trustees and thereby obstructing the orderly administration of the

4. Mosca is the union-designated trustee who filled the vacancy left by Gallante Sr.'s resignation in June 1993. The parties do not dispute his status.

5. Emil Parietti sought to exercise his power to designate union trustees by appointing Valente and John Parietti to the Board of Trustees of the HVDC Funds on October 25, 1994, presumably in place of Zavattoni and Gallante Jr.

HVDC Funds. Plaintiffs also seek damages on this claim. We have jurisdiction over these claims under 29 U.S.C. §§ 186, 1109, 1132.

Under both ERISA and the Labor Management Relations Act, all assets of an employee benefit plan must be held in trust. See 29 U.S.C. § 1103(a); 29 U.S.C. 186(c)(5). The trust is, of course, typically established pursuant to a written trust agreement. ERISA further provides that every employee benefit plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). This plan instrument governs the operation of the plan and must, inter alia, provide a procedure for amending the plan. See 29 U.S.C. § 1102(b)(3). There is no dispute that each of the HVDC Funds was established and maintained according to a trust agreement and a plan instrument or that those documents provide for a four-member Board of Trustees.

■ Absent legislation to the contrary, the trust agreement controls the appointment of trustees. See Holcomb v. United Automotive Ass'n, 852 F.2d 330, 333 (8th Cir.1988). Plaintiffs contend that ERISA contains a contrary provision, which states that trustees "shall be either named in the trust instrument or in the plan instrument ... or appointed by a person who is a named fiduciary...." 29 U.S.C. § 1103(a) (emphasis added). Plaintiffs argue that Frank, O'Beirne, Valente and John Parietti are therefore duly appointed trustees simply by virtue of being appointed by named fiduciaries of the plans. Section 1103(a) is not, however, contrary to the principle that the trust agreement controls the number of trustees that may be appointed. Nothing in ERISA indicates that a named fiduciary appointing a trustee does not have to adhere to any limitations that the trust agreements place on the total number of trustees.

Therefore, the trust agreements control the appointment of the HVDC Funds' trustees, and the issue in this case becomes whether the trust agreements for the HVDC Funds have been properly amended to provide for an eight-member Board. The trust agreements provide that they may be amended at any time by an instrument in writing, executed by the trustees. See Exhibit 8, at 19; Exhibit 17, at 19; Exhibit 21, at 20; Exhibit 26, at 18 (all attached to Gallante Aff.). Each previous amendment to the trust agreements was made in a written document signed by each trustee. See, e.g., Exhibits 9–10, 18–20, 22–25, 27, attached to Gallante Aff. The parties acknowledge that no such document was ever executed expanding the Board of Trustees of the HVDC Funds from four to eight trustees.

■ Plaintiffs argue nonetheless that the minutes of the Board of Trustees' meetings demonstrate that the Board had resolved to expand its membership and that those minutes are a sufficient written record to constitute an amendment of the trust agreements. Assuming for the moment that plaintiffs' characterization of the minutes is correct, the minutes of the Board meeting at which O'Beirne and Frank were recognized are not signed by anyone, while the minutes of the Board meeting at which Zavattoni and Gallante Jr. were recognized are signed by some of the trustees and purported trustees, but not by all. See Exhibits D, E, attached to Plaintiffs' Sept. 22 Rule 3(g) Statement. Therefore, those minutes do not satisfy the requirement that amendments to the trust agreements must be executed by the Trustees.

■ Furthermore, the case law does not support plaintiffs' contention that "[w]ritten minutes of the trustees' meeting and a resolution adopting the amendment are sufficient notwithstanding the lack of an executed amendment to the plan documents." See Plaintiffs' Brief in Support of Motion for Summary Judgment, at 13. The only case that plaintiffs cite in support of this proposition is Huber v. Casablanca Indus., Inc., 916 F.2d 85, 105–06 (3d Cir.1990), cert. dismissed, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). The modification procedure outlined in the plan instrument at issue in that case permitted modification "by the Trustees," without specifying any format for amendments. The Third Circuit held that under those circumstances, resolutions increasing the benefits paid to participants that were approved by the Board and recorded in

the written minutes of that meeting were valid amendments to the plan instrument. *See id.* Therefore, *Huber* stands for nothing more than the unremarkable proposition that amendments to the plan instrument are valid when they are adopted in accordance with the amendment procedures outlined in the plan instrument. It does not support plaintiffs' position that the trust agreements at issue in this case may be amended by a resolution of the Board recorded in unexecuted minutes. *Cf. Sigmund Cohn Corp. v. District No. 15 Machinists Pension Fund,* 804 F.Supp. 490, 494–95 (E.D.N.Y.1992) (holding that purported amendment to plan instrument made by Board resolution and recorded in unexecuted minutes was ineffective where trust agreement provided for amendment of plan instrument and trust agreement only by writing executed by trustees).

■ Plaintiffs base their next argument on a provision in the trust agreements that authorizes the trustees of the HVDC Funds to merge the HVDC Funds with other funds "upon any terms and conditions mutually agreed upon by the Trustees of [the HVDC funds] and such other Fund[s], subject to the provisions of ERISA." Exhibit 8, at 18–19; Exhibit 17, at 19; Exhibit 21, at 19; Exhibit 26, at 17 (all attached to Gallante Aff.). Plaintiffs point out that the trust agreements do not specify that the terms of a merger must be in written form. Plaintiffs assert that when the District Council of Bricklayers and Allied Craftsmen of Westchester & Putnam Counties Funds ("Westchester Funds") agreed to merge into the HVDC Funds on January 1, 1991, the trustees of the two sets of funds agreed orally that the HVDC Funds' Board of Trustees should be expanded to eight members to include individuals who had previously served on the Board of the Westchester Funds.[6] *See* Affidavit of Richard O'Beirne, dated Nov. 2, 1995, at ¶¶ 2, 5. Plaintiffs contend that the trustees of the HVDC Funds amended the trust agreements when they reached this oral agreement.

This argument, while ingenious, cannot circumvent the unambiguous directive in the trust agreements that amendments to those documents must be in writing and executed by the trustees. The trustees of the HVDC Funds may undoubtedly merge the HVDC Funds with other funds on conditions that necessitate amendments to the trust agreements. Nothing in the merger provision, however, releases the trustees from the obligation to follow the required procedure.[7]

Finally, plaintiffs contend that defendants should be equitably estopped from asserting that the Board of Trustees has only four members because defendants failed to object to the purported trustees' participation until March 16, 1994. Indeed, it is undeniable that the purported trustees were treated in every way as if they had been duly appointed. Plaintiffs have not, however, cited a single case in which a court has applied equitable estoppel to preclude a challenge to an individual's status as a trustee.[8]

---

**6.** The written merger documents do not address the composition of the post-merger Board of Trustees. *See, e.g.,* Exhibit K, attached to Plaintiffs' Sept. 22 Rule 3(g) Statement.

**7.** Plaintiffs cite *Licensed Div. Dist. No. 1 MEBA/ NMU v. Defries,* 943 F.2d 474, 480–82 (4th Cir. 1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992), to support the proposition that we may rely on the merger agreement even if it did not amend the trust agreements. In that case, however, the court looked to the merger agreement in order to interpret a provision of the trust agreement that had become ambiguous as a result of the merger. In this case, by contrast, the trust agreements unambiguously provide for a four-member Board of Trustees. Accordingly, we have no reason to look to the alleged merger agreement for aid in interpreting this provision.

**8.** Plaintiffs' reliance on *Donovan v. Mercer,* 747 F.2d 304, 308–09 (5th Cir.1984), is misplaced. Admittedly, the Fifth Circuit stated in passing that where, over the span of seven years, the defendant was referred to as a trustee and signed numerous documents as a trustee, "it would be untenable to conclude other than that [she] was a trustee with fiduciary duties to the [employee benefit plan]." *Id.,* at 309.

Upon considering the decision as a whole, however, it is clear that the issue before the court was the defendant's fiduciary status, rather than her status as a trustee. The court held that the defendant was a fiduciary and could be held liable for any breach of her duties, whether or not she had ever been formally appointed a trustee.

Plaintiffs argue that we should not permit the individual defendants to profit from their own neglect in failing to prepare a formal amendment to the trust agreements. Plaintiffs' argument ignores, however, the fact that plaintiffs O'Beirne and Frank were also acting as members of the Board of Trustees throughout the period from early 1991 until September 21, 1993. They were equally aware that the Board had taken no formal action. There was no obstacle to amending the trust agreements at any time during that two-year period, as the procedure is quite simple and relations among the members of the Board do not appear to have been marked by the animosity now prevalent. Indeed, the amendment could have been accomplished quite easily if each of the trustees had simply signed the minutes of the meetings at which the four purported trustees were "appointed." *Cf. Cohn,* 804 F.Supp. at 495. We are not inclined to apply the doctrine of equitable estoppel on plaintiffs' behalf where both plaintiffs and defendants failed to follow the amendment procedures clearly outlined in the trust agreements.

As is apparent from our discussion of this issue, there are no genuine issues of material fact that would preclude the entry of summary judgment. We are confident that the factual record has been fully developed, as the parties have submitted lengthy affidavits and numerous exhibits in support of their arguments. Because the issues raised by plaintiffs' motion are the same ones on which we base our decision, plaintiffs will suffer no procedural prejudice if we grant summary judgment in defendants' favor. Therefore, because the law favors defendants on this issue, we hold that the Board of Trustees of the HVDC Funds is properly composed of four members. Accordingly, we grant summary judgment for defendants on plaintiffs' fourth and fifth claims and on that portion of plaintiffs' sixth claim that relates to defendants' alleged breach of fiduciary duty by obstructing the participation of Frank, O'Beirne, Valente and John Parietti in the activities of the Board of Trustees.

We are well aware of the animosity that has developed between a number of the individual plaintiffs and defendants in this case. We are mindful that as a result of this ruling, the present composition of the Board of Trustees of the HVDC Funds is two plaintiffs—Mosca and Emil Parietti—and two defendants—Mauro and Ciferri. The potential for deadlock, and for continued difficulties in the administration of the HVDC Funds, certainly exists. Nevertheless, there is simply no legal basis for finding otherwise. We strongly encourage the Board members, in the wake of this ruling, to put their differences behind them and to turn their attention to administering the HVDC Funds on behalf of the beneficiaries.

## B. Gallante Sr.'s Consulting Contract

Plaintiffs have also moved for summary judgment on their claims challenging the consulting contract between the HVDC Funds and Gallante Sr. Plaintiffs' seventh claim seeks rescission of the contract, an order directing Gallante Sr. to make restitution to the HVDC Funds for all payments made to him under the contract and a judgment declaring that defendants breached their fiduciary duties by awarding the contract and by permitting payments to be made under it. Plaintiffs' eleventh claim seeks an accounting of all payments made under the contract and the imposition of a constructive trust thereon. Under 29 U.S.C. § 1109(a), this court has broad discretion to fashion a remedy for breaches of fiduciary duty. *See Marshall v. Snyder,* 572 F.2d 894, 901 (2d Cir.1978); *Gilliam v. Edwards,* 492 F.Supp. 1255, 1266–67 (D.N.J.1980).

> Section 1106(a) of ERISA provides:
> Except as provided in section 1108 of this title: (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... (C) furnishing of goods, services, or facilities between the plan and a party in interest....

Section 1108(b)(2) creates an exception to this provision for "[c]ontracting or making reasonable arrangements with a party in interest for ... services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid

therefor." "Party in interest" includes plan administrators, trustees, employees and any persons providing services to the plan. *See* 29 U.S.C. § 1002(14)(A–B).

The pertinent Department of Labor regulation provides that:

[c] No contract or arrangement is reasonable within the meaning of [29 U.S.C. § 1108(b)(2) ] ... *if it does not permit termination by the plan without penalty to the plan on reasonably short notice under the circumstances to prevent the plan from becoming locked into an arrangement that has become disadvantageous.*

29 C.F.R. § 2550.408b–2(c).

Defendant Gallante Sr.'s contract does not satisfy this requirement. The term of the contract is July 1, 1993, to December 31, 1996—almost three and a half years. There is no provision that permits the HVDC Funds to terminate the contract before the end of that period. *See* Exhibit C, attached to Plaintiffs' Sept. 22 Rule 3(g) Statement. This arrangement is clearly contrary to the expressed goal of the regulation, which is to prevent a fund from being locked into an arrangement that is no longer beneficial to the fund. The consulting transaction is therefore invalid, if it was caused by a fiduciary of the HVDC Funds.

▇▇▇ Defendants contend that the consulting contract does not violate § 1106(a)(1)(C) because Gallante Sr. did not cause this arrangement to occur. Regardless of whether he had a hand in securing this deal, however, the contract is invalid. Cavallaro, Mauro, Ciferri, O'Beirne, Frank, Zavattoni, and Gallante Jr. approved the consulting contract by signing it. Regardless of whether each of these men was a duly appointed trustee, each was purporting to act as a trustee and was, therefore, a fiduciary of the plan. *See Mercer*, 747 F.2d at 309. Each breached his fiduciary duties by awarding a contract that is, on its face, unreasonable and by permitting the HVDC Funds to make payments under the contract. *See Gilliam*, 492 F.Supp. at 1264–65. Nonetheless, plaintiffs' claim for relief alleges only that Ciferri, Cavallaro and Mauro breached their fiduciary duties; the actions of O'Beirne, Frank, Zavattoni and Gallante Jr. are not before the court. Accordingly, we grant summary judgment for plaintiffs on that part of their seventh claim that seeks a declaration that Ciferri, Mauro and Cavallaro breached their fiduciary duties to the HVDC Funds by approving this transaction. We also grant summary judgment rescinding the contract and declaring it null and void.

It is less clear, at this time, whether an order of restitution is appropriate. According to defendants, Gallante Sr. is uniquely qualified to assist the Board in administering the HVDC Funds and has provided substantial services since he resigned from the Board of Trustees in June 1993. *See* Gallante Aff., at ¶ 49; Affidavit of Roderick W. Ciferri, III, dated Oct. 16, 1995, at ¶ 23. The question, then, is whether Gallante Sr. is entitled to compensation for those services rendered or whether he should be ordered to make restitution of any or all of the payments that he has received from the HVDC Funds.

Gallante was indisputably a plan fiduciary when the Board approved the contract because he did not resign from the Board of Trustees until the day *after* the contract became effective. Therefore, if Gallante Sr. caused the consulting contract to be awarded to himself, he has violated § 1106(a)(1). He has also violated 29 U.S.C. § 1106(b)(1), which states that "[a] fiduciary with respect to a plan shall not ... deal with the assets of the plan in his own interest or for his own account...." Under those circumstances, we believe that restitution of all payments that he received under the contract might well be the appropriate remedy. *See Gilliam*, 492 F.Supp. at 1266–67. On the other hand, if Gallante Sr. did not initiate the negotiation of the contract and was not involved in the decision to approve it, he may be entitled to reasonable compensation for services actually rendered to the plan and/or for expenses actually incurred on behalf of the plan. *See* 29 U.S.C. § 1108(c)(2). The burden is, however, on the individual defendants to prove that any payments made by the HVDC Funds were fair and reasonable. *See New York State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir.1994).

■ The existence of a genuine issue of material fact prevents the summary resolution of this issue. The parties disagree as to whether Gallante Sr. initiated the negotiations that led to the consulting contract or whether he was present during the discussion and voting that resulted in the Board's decision to award the contract. *Compare* Affidavit of Richard O'Beirne, dated Sept. 22, 1995, at ¶ 5; Affidavit of George A. Frank, dated Sept. 21, 1995, at ¶ 6; *with* Gallante Aff., at ¶¶ 44–45; Affidavit of Roderick W. Ciferri, III, dated Oct. 16, 1995, at ¶¶ 17–20; Affidavit of Katherine Mattes, dated Oct. 16, 1995, at ¶ 3. Therefore, we deny plaintiffs' motion for summary judgment on their eleventh claim and on that portion of their seventh claim that requests restitution.

## C. Dues Check-off Payments

Finally, plaintiffs have moved for summary judgment on their claims relating to dues check-off payments withheld by the defendants. In their ninth claim, plaintiffs seek the imposition of a constructive trust on any dues check-off payments withheld by action of the defendants, an accounting and an order directing payment of those funds to Local 5 and/or the International Union. In their eighth claim, plaintiffs seek punitive damages against the individual defendants. In their tenth claim, plaintiffs seek a permanent injunction prohibiting defendants from interfering in the transmission of dues check-off payments from the HVDC Funds to Local 5 and the International Union. We have jurisdiction over these claims under 29 U.S.C. § 185, which authorizes suits to enforce collective bargaining agreements, and under 29 U.S.C. §§ 1109(a), 1132, which authorize suits for remedial relief against plan fiduciaries.

Under the dues check-off system, union members sign authorization forms permitting the deduction of a percentage of their union dues from their paychecks. As part of the collective bargaining agreement between the local union and the employer, the local union designates the employee benefit funds' administration fund account as the collection agent for the dues check-off monies. Employers may then remit all payroll deductions to that account, lessening the administrative burden on the employers.

The arrangement in this case is no exception to this general rule. The collective bargaining agreements signed by employers and the HVDC provided that:

> [T]he Joint Benefit Administration Fund Account of the [HVDC] has been designated as the collection agent for the following funds: ...
>
> (h) Payroll Deduction Dues Check-off
>
> By this agency designation, the parties intend only to reduce to a minimum the bookkeeping and clerical work involved in the preparation and filing of report forms and the simplification of payments to the Funds, but, nevertheless, they intend to maintain a complete separation of the funds.

*See, e.g.,* Exhibit D, at § 17.1, attached to Affidavit of Emil A. Parietti, Jr., dated Apr. 18, 1995. As successor to the HVDC, Local 5 has continued this designation.[9] The parties do not dispute that employers have been remitting dues check-off deductions to the HVDC Funds' account for the appropriate Local 5 members, nor do they dispute that on the instruction of Cavallaro, purportedly acting for the Board of Trustees, the HVDC Funds' administrative office has not transmitted a substantial portion of the dues check-off monies collected since April 1994. *See* Exhibit F, attached to Affidavit of Emil A. Parietti, Jr., dated Apr. 18, 1995.

■ Defendants contend that they have properly withheld the dues check-off payments as a set-off against the benefit contributions that they allege Local 5 should have been paying to the HVDC Funds for the Pariettis. Even if we assume that Local 5 is delinquent in making those benefit con-

---

9. The collective bargaining agreements between employers and Local 5 provide for payment to the Joint Benefit Administration Fund Account of Local 5. No such account exists, however, which renders this provision ambiguous. Nevertheless, as Local 5 is the successor to the HVDC, the obvious conclusion is that payroll deductions, including dues check-off payments, taken from the paychecks of Local 5 members who receive their benefits from the HVDC Funds should be paid to the HVDC Joint Benefit Administration Fund Account.

tributions, defendants are not entitled to set-off. The equitable remedy of set-off is available only where debts are mutual. Debts between parties that arise when those parties are acting in different capacities are not considered mutual. *See Modern Settings, Inc. v. Prudential–Bache Securities, Inc.,* 936 F.2d 640, 648 (2d Cir.1991); *Matter of Midland Insur. Co.,* 79 N.Y.2d 253, 582 N.Y.S.2d 58, 64, 590 N.E.2d 1186, 1192 (1992). Because the defendants hold the dues check-off monies in their capacity as agent for the union but assert a claim to the benefit contributions for the Pariettis in their capacity as trustees, they are not entitled to set-off the two amounts.

Plaintiffs have demonstrated a clear right under the relevant contracts to receive the dues check-off monies. Accordingly, we grant summary judgment in favor of plaintiffs directing the HVDC Funds to ascertain the amount of dues check-off monies owed as of the date of this order and to transfer that sum to Local 5 or to the International Union within fifteen days of the issuance of this order. We also direct the HVDC Funds' trustees and administrators to provide the representatives of Local 5 and/or the International Union with access to the relevant records so that they may verify the HVDC Funds' calculations. As we have directed the defendants to pay plaintiffs the amount of dues check-off monies owed, there is no need to address plaintiffs' request for the imposition of a constructive trust.

We also need not take the drastic step of entering a permanent injunction against defendants to prevent the further withholding of dues check-off payments. At this time, there is no indication that defendants will fail to comply with this order or to honor their future obligations in accordance with the principles set forth here. Therefore, we deny plaintiffs' motion for summary judgment on their eleventh claim. We also deny plaintiffs' motion for summary judgment on their eighth claim, which seeks punitive damages, as it is by no means clear that the defendants have acted with the requisite malice and intent to injure plaintiffs.

## D. Benefit Contributions

We turn now to defendants' motion for summary judgment on their counterclaim, under 29 U.S.C. §§ 185, 1132, 1145, to recover benefit contributions for the Pariettis that defendants allege should have been paid to the HVDC Funds. Several crucial facts are not in dispute. First, although Local 29 joined the HVDC and although the International Union has since dissolved the HVDC and its constituent local unions and replaced them with Local 5, the HVDC Funds and the Local 29 Funds continue to operate as separate entities. Second, there are no employee benefit plans in existence that are specifically designated the "Local 5 Funds." Third, Emil and John Parietti were full-time employees of Local 29 until March 31, 1994, when they became full-time employees of Local 5. Last, Local 5 has continued to make benefit contributions for the Pariettis to the Local 29 Funds.

Article XVII of the current collective bargaining agreements, which cover the period June 1, 1993, to May 31, 1996, provides that "Local 5 New York Bricklayers and Allied Craftsmen shall be considered as a contributing employer for the purpose of paying to the said Trust Funds for its full-time employees and the said employees shall be entitled to such benefits as are afforded other employees...." Exhibit A, at ¶ 17.6, attached to Affidavit of Emil A. Parietti, Jr., dated May 25, 1995. The phrase "the said Trust Funds" is not defined. Paragraph 17.1, however, states:

> 17.1 ... [T]he Joint Benefit Administration Fund Account of Local 5 has been designated as the collection agent for the following:
>
> (a) Welfare Fund ...
>
> (b) Retirement Fund ...
>
> (c) Apprentice Training and Journeymen Upgrading Fund
>
> (d) Labor Management Coalition and Resource Recovery Plan ...
>
> (h) Payroll Deduction Dues Check-off

*Id.,* at ¶ 17.1. The obvious implication of this paragraph and of the numerous references to Local 5 throughout Article XVII is that "the said Trust Funds" refers to funds affiliated

 

with Local 5. There are no "Local 5 Funds," however. Instead, two sets of funds provide benefits to Local 5 members and full-time employees: the HVDC Funds and the Local 29 Funds.

 We find that the provision directing Local 5 to make benefit contributions for its full-time employees to "the said Trust Funds" is ambiguous in light of the fact that no "Local 5 Funds" exist. Nothing in the current collective bargaining agreements specifies whether payments should be made to the HVDC Funds or to the Local 29 Funds. Therefore, we must look to extrinsic evidence to establish the intention of the parties concerning the payment of benefit contributions for the Pariettis. Defendants contend that the funds referred to in the Local 5 collective bargaining agreements must be the HVDC Funds because Local 5 is the successor to the HVDC. This argument is not dispositive, however, because Local 5 is also the successor to Local 29. Plaintiffs, on the other hand, assert that when Local 29 joined the HVDC, the trustees of the HVDC Funds and the trustees of the Local 29 Funds reached an oral agreement that until the Local 29 Funds and the HVDC Funds could be merged, Local 29 should continue to make contributions for its full-time employees to the Local 29 Funds in order to ensure continuity of benefits. Plaintiffs contend that they have adhered to this agreement, which is not altered by the current collective bargaining agreements. Plaintiffs have demonstrated that there is a question of fact concerning the existence of the alleged oral merger agreement. *Compare* Affidavit of Emil A. Parietti, Jr., dated May 25, 1995, at ¶¶ 16, 24–25 (benefit contributions for Local 29 full-time employees to be made to Local 29 Funds until merger of funds); Affidavit of Dominic Spano, dated May 24, 1995, at ¶¶ 12–14 (same); *with* Affidavit of R. Salvatore Mauro, dated June 2, 1995, at ¶ 13 (benefit contributions for Local 29 full-time employees never discussed and parties' intent was payment to HVDC Funds).

Accordingly, we deny defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted in part and denied in part. Defendants are directed to pay plaintiffs, within fifteen days of the date of this order, the amount of dues check-off payments that have been withheld. Defendants' motion for summary judgment on its counterclaim is denied.

SO ORDERED.